FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 23, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAINA BLEDSOE, a single woman,<br><br>                Plaintiff,<br><br>   v.<br><br>FERRY COUNTY, WASHINGTON;<br>MICHAEL BLANKENSHIP, in his<br>personal, representative, and<br>professional capacity; NATHAN<br>DAVIS, in his personal,<br>representative, and professional<br>capacity; JOHNNA EXNER, in<br>her personal, representative, and<br>professional capacity; and AMANDA<br>ROWTON, in her personal,<br>representative, and professional<br>capacity,<br><br>                Defendants. | NO:  2:19-CV-227-RMP<br><br>ORDER RESOLVING<br>DEFENDANTS' MOTION TO<br>DISMISS |

Jaina Bledsoe is a community political activist who was criminally charged

for using chalk to write on the walkway leading to the Ferry County Commission

Building.   Ms. Bledsoe alleges that at various times in 2017 Commissioner Mike

Blankenship publicly called certain citizens "sheep" and "jackasses."  ECF No. 1

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 1

at 4. He focused these remarks on people who disagreed with his plans regarding a local recreational trail. *Id*. In response to these comments, Ms. Bledsoe delivered a shepherd's crook and a note to Commissioner Blankenship's office; the note stated: "Mike—The 'sheep' that are all concerned 'jackasses' about that 'piece of shit trail' would like to ensure that you have the proper tools for your particular leadership style. Enjoy!" *Id*. at 5. Ferry County Commissioners Nathan Davis and Johnna Exner immediately called the police to report the note and shepherd's crook delivery. *Id*.

On February 26, 2018, the Board of Commissioners held a public hearing to address issues regarding the recreational trail. *Id*. Prior to the meeting, Ms. Bledsoe wrote messages in chalk on the walkway leading to the Ferry County Commission Building. *Id*. These messages stated, "You are not sheep," and "You are not jackasses." *Id*. Ms. Bledsoe claims that she wrote these messages to encourage citizens to speak out against Commissioner Blankenship at the public meeting. *Id*. The Board of Commissioners also had posted notices regarding the same meeting on the doors to the Commission Building, just feet away from Ms. Bledsoe's chalk messages. *Id*. Ms. Bledsoe states that her messages did not cause any harm to the building, walkway, or any other structure, nor did they impair access to the public walkways or the building. *Id*. at 6.

Ms. Bledsoe alleges that, upon seeing the messages, the Clerk of the Board of Commissioners, Amanda Rowton, called the Ferry County law enforcement

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 2

dispatcher and demanded that an officer confront Miss Bledsoe. *Id.* When dispatching the responding officer, the dispatcher stated, "it was just in chalk, but they're requesting contact." *Id.*; ECF No. 10-5 at 3. Then, Ms. Bledsoe alleges that either Ms. Rowton or another agent of the Commission began removing her chalked statements. ECF No. 1 at 6.

On March 21, 2018, the Ferry County Prosecuting Attorney brought a charge of malicious mischief in the third degree against Ms. Bledsoe, based on the chalk messages that she wrote prior to the public meeting on February 26, 2018. *Id.* at 7. Ms. Bledsoe alleges that the Commissioners' office "was in close contact with the Prosecuting Attorney's Office before and after the Complaint was filed." *Id.* Furthermore, she claims that Commissioner Blankenship told staff at the Prosecuting Attorney's office that Ms. Bledsoe should be convicted and sentenced to the maximum one-year jail sentence and fined $5,000 for her actions. *Id.* at 8. Additionally, Ms. Bledsoe alleges that an anonymous "concerned citizen" called the Prosecuting Attorney's Office with advice on charging and venue regarding Ms. Bledsoe's case; she implies, but does not plead, that the caller worked for the Commission. *Id.*

On August 20, 2018, after a *Knapstad* hearing, the state court dismissed the charge against Ms. Bledsoe. ECF No. 10-5. Judge Thomas Brown concluded that writing in chalk on a walkway is not "property damage" for the purposes of malicious mischief in the third degree. *Id.* at 5. In his order, Judge Brown also

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 3

stated: "[T]his is not about chalk. This is about a personal dislike for a citizen of Ferry County." *Id*. at 7.

In October 2016, at a "candidates night," Commissioner Nathan Davis was asked about the Commission's support of Ms. Bledsoe's prosecution. ECF No. 1 at 9. In his response, he allegedly supported Ms. Bledsoe's prosecution, stating that she was to blame for "a pattern of stuff that [was] starting to happen" before a contentious meeting. *Id*.

On July 2, 2019, Ms. Bledsoe filed a Complaint in this Court against Defendants Ferry County, Commissioner Michael Blankenship, Commissioner Nathan Davis, Commissioner Johnna Exner, and Clerk Amanda Rowton. ECF No. 1. Ms. Bledsoe has named each individual defendant in his or her individual and official capacities. She alleges that each Defendant violated her First Amendment right to free speech, and she brings a state claim of malicious prosecution against all Defendants. *Id*. Defendants now move to dismiss for failure to state a claim.

## LEGAL STANDARD

Complaints filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant challenges a complaint's sufficiency under Fed. R. Civ. P. 12(b)(6), the court must determine whether the complaint bears "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 4

pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In deciding a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## I.     Section 1983 Claims

Ms. Bledsoe brings her First Amendment claims against Defendants through 42 U.S.C. § 1983. "Traditionally, the requirements for relief under [§] 1983 have been articulated as (1) a violation of rights protected by the Constitution or created by a federal statute, (2) proximately caused (3) by the conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947, F.2d 1418, 1420 (9th Cir. 1991).

### A. First Amendment Claim

Ms. Bledsoe claims that Defendants infringed upon her First Amendment right to free speech by removing her chalk statements from the sidewalk before her intended audience could view them and by demanding her prosecution for malicious mischief in retaliation for her chalked statements. Defendants respond

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 5

that their actions were constitutional because Washington's malicious mischief statute prohibits drawing on sidewalks in chalk. *See* RCW 9A.48.090(b). Defendants argue that the state's third-degree malicious mischief statute does not infringe upon Ms. Bledsoe's First Amendment rights.

Ms. Bledsoe alleges that she chalked a sidewalk, which constitutes a public forum, or, in the alternative, a limited public forum. At the hearing, it became clear that the nature of the chalked area is disputed. However, when the facts are taken in the light most favorable to Ms. Bledsoe, the area that she chalked was a sidewalk or public walkway, which constitutes a public form. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Public fora, which include places like streets and parks, "have immemorially been held in trust for the use of the public, and . . . have been used for purposes of assembly, communicating thoughts between citizens and discussing public questions." *Haugue v. CIO*, 307 U.S. 496, 515 (1939); *see also Frisby v. Schultz*, 487 U.S. 474, 480 (1988) (Public streets and walkways are the "archetype of a traditional public forum."). To decide which level of scrutiny applies to laws restricting speech in public fora, the reviewing court must determine whether the law is content-based or content-neutral. "Content-based regulations are presumptively unconstitutional." *Foti*, 146 F.3d, at 637. However, if the law is content-neutral, then the state may place restrictions on the time, place, and manner of speech, as long as such restrictions are "narrowly tailored to serve a significant

government interest, and leave open ample alternative channels of communication." *Id*. 635–36 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citation omitted)).

The Complaint in this matter does not expressly state whether Ms. Bledsoe's First Amendment challenge is a facial challenge or an "as-applied" challenge. In her briefing, Ms. Bledsoe claims to challenge Washington's third-degree malicious mischief statute both on its face, and as applied to her. *See* ECF No. 9 at 2–3. However, Ms. Bledsoe's facial challenge is premised on Washington State law, rather than the Federal Constitution. *See id*. Because Ms. Bledsoe brings her First Amendment challenge through Section 1983, her claim must be premised on the First Amendment of the United States Constitution, not the Washington State Constitution. *See Armstrong v. Asselin*, 743 F.3d 984, 989 (9th Cir. 2013).

### As-Applied Challenge

Ms. Bledsoe also argues in her briefing that she has pleaded a plausible "as-applied" First Amendment challenge to Washington's third-degree malicious mischief statute. "An 'as-applied' challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In other words, the law is used to limit or restrict speech based on the speaker's message, even though, on its face, the law

may appear content neutral. *See id*. "A successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Id*.

The statute in question, Washington's third-degree malicious mischief statute, prohibits writing on buildings and structures, as well as "any real or personal property owned by another person . . . ." RCW 9A.48.090(b). The statute does not expressly discriminate based on the content of one's message. *See id*. However, Ms. Bledsoe has alleged that citizens frequently draw in chalk on the sidewalk and are not prosecuted for doing so. ECF No. 1 at 7. For instance, she claims that students from a local Christian school have chalked Bible verses and messages of religious encouragement on the sidewalks and have not been prosecuted for doing so. *Id*.

Ms. Bledsoe, on the other hand, chalked messages that opposed the statements of Commissioner Blankenship, and it is undisputed that the malicious mischief statute was enforced against her for her chalking. Ms. Bledsoe claims that the Commissioners' Office was in close contact with the Prosecutor's Office, directing her prosecution, and that Commissioner Blankenship told the Prosecutor's Office that Ms. Bledsoe should receive the maximum penalty for malicious mischief in the third degree. *Id*. at 8. When the allegations in the Complaint are taken as true, and when all reasonable inferences are drawn in Ms. Bledsoe's favor, Defendants sought the enforcement of Washington's malicious mischief statute against Ms. Bledsoe because of the content of her political

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 8

message.  Therefore, Ms. Bledsoe has alleged successfully that Washington's

malicious mischief statute is unconstitutional as applied to her.

Because Ms. Bledsoe has pleaded a plausible First Amendment claim

through her as-applied challenge to Washington's third-degree malicious mischief

statute, her Section 1983 claim premised on the First Amendment survives

Defendants' Motion to Dismiss.

## B. First Amendment Retaliation Claim

Ms. Bledsoe also brings a retaliatory prosecution claim under the First

Amendment.  Government officials violate the First Amendment when they

retaliate against individuals for exercising their right to free speech.  "[T]he law is

settled that as a general matter the First Amendment prohibits government officials

from subjecting an individual to retaliatory actions, including criminal

prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250 (2006); *Ariz.*

*Students' Ass'n v. Ariz. Bd. Of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).  To

succeed on a First Amendment retaliation claim, the plaintiff must prove:

> (1) [he or she] engaged in constitutionally protected activity;

> (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and

> (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and the intent to chill speech.

//

*Ariz. Students' Ass'n*, 824 F.3d at 858 (quoting *O'Brien v. Welty*, 818 F.3d 920,

933–34 (9th Cir. 2016). Additionally, when the defendant is not the prosecuting

attorney in the underlying criminal case, the plaintiff must show that the defendant

"induced the prosecutor to bring charges that would not have been initiated without

his urging." *Hartman*, 547 U.S. at 262.

Generally, the plaintiff in a First Amendment retaliation case must also

plead and prove a lack of probable cause. *See Nieves v. Bartlett*, 139 S. Ct. 1715,

1727 (2019); *see also Hartman*, 547 U.S. at 261. However, the Supreme Court

recently has clarified the want of probable cause requirement in the context of

retaliatory arrests. In *Nieves v. Bartlett*, the Court explained that, "[a]lthough

probable cause should generally defeat a retaliatory arrest claim, a narrow

qualification is warranted for circumstances where officers have probable cause to

make arrests, but typically exercise their discretion not to do so." *Nieves*, 139 S.

Ct. at 1727 (2019). The Court then provided the following example to support its

logic:

> [A]t many intersections, jaywalking is endemic but rarely results in arrest. If
> an individual who has been vocally complaining about police conduct is
> arrested for jaywalking at such an intersection, it would seem insufficiently
> protective of First Amendment rights to dismiss the individual's retaliatory
> arrest claim on the ground that there was undoubted probable cause for the
> arrest . . . . For those reasons, we conclude that the no-probable-cause
> requirement should not apply when a plaintiff presents objective evidence
> that he was arrested when otherwise similarly situated individuals not
> engaged in the same sort of protected speech had not been.

*Id.* The Supreme Court's exception, as explained in *Nieves*, recognizes that requiring the plaintiff to plead and prove lack of probable cause in every First Amendment retaliation case does not sufficiently protect First Amendment rights.

Ms. Bledsoe's Complaint properly states the first element of her First Amendment retaliation claim, as she alleged that she engaged in constitutionally protected activity by writing political messages in chalk in a public forum. Second, the Court considers whether Defendants' action would chill a person of ordinary firmness from continuing to exercise her First Amendment rights. Ms. Bledsoe has alleged that the Commissioners' Office encouraged and directed her prosecution. ECF No. 1 at 8. She claims that Commissioner Blankenship asked the prosecuting attorney to seek the harshest penalty possible under the malicious mischief statute. *Id.* Facing criminal prosecution and a possible penalty of up to one year in jail would chill a person of ordinary firmness from continuing to exercise her right to free speech.

Third, Ms. Bledsoe has alleged facts that, if taken as true, show that the protected activity was a substantial motivating factor contributing to her prosecution. Ms. Bledsoe claims that her messages were designed to encourage citizens to oppose Commissioner Blankenship at a public meeting. ECF No. 1 at 5. In response to Ms. Bledsoe's chalking, Commissioner Blankenship allegedly told the Prosecuting Attorney's Office that Ms. Bledsoe should be imprisoned for one year and fined $5,000. ECF No. 1 at 8. Ms. Bledsoe states that no other person in

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 11

the City of Republic has been prosecuted, imprisoned, or fined for writing on the sidewalk in chalk. *Id*. at 7. From these factual allegations, the Court draws the reasonable inference that the content of Ms. Bledsoe's messages, rather than Ms. Bledsoe's act of chalking, caused Defendants to seek her prosecution. Therefore, Ms. Bledsoe has stated facts sufficient to show that her alleged protected activity, engaging in political speech via chalked messages, was a substantial factor motivating Defendants' conduct.

Fourth, the Court considers whether Defendants "induced the prosecutor to bring charges that would not have been initiated without [their] urging." *Hartman*, 547 U.S. at 262. As already explained, Ms. Bledsoe's allegations indicate that Defendants in the Commissioners' Office initiated and directed her prosecution. Additionally, Ms. Bledsoe's Complaint states: "The citizens of Republic often draw in chalk on the sidewalk without prosecution and without having their messages removed by officials. For instance, students from a local Christian school have chalked Bible verses . . . on the sidewalks and upon belief have not been prosecuted or had their messages removed." ECF No. 1 at 7. Therefore, Ms. Bledsoe's Complaint contains factual allegations showing that Defendants induced the prosecutor to bring charges that would not have been brought otherwise.

Finally, the Court considers whether Ms. Bledsoe has alleged a lack of probable cause. The charges against Ms. Bledsoe were dismissed because, according to Judge Brown, writing in chalk is not property damage, which is an

essential element of RCW 9A.48.090(a), the crime for which Ms. Bledsoe was charged. ECF No. 10-5. Defendants argue that probable cause existed to prosecute Ms. Bledsoe under RCW 9A.48.090(b), a different subsection of Washington's third-degree malicious mischief statute that does not require proof of property damage. However, Ms. Bledsoe was not charged with violating RCW 9A.48.090(b). Therefore, the Court finds that Ms. Bledsoe's Complaint demonstrates that there was a lack of probable cause "to bring the criminal charge" against her. *See Hartman*, 547 U.S. at 261.

Alternatively, the Court finds that Ms. Bledsoe is not required under *Nieves* to plead and prove a lack of probable cause, as Ms. Bledsoe has alleged facts demonstrating that chalking on public sidewalks rarely, if ever, is prosecuted. *See Nieves*, 139 S. Ct. at 1727. The Court emphasizes that this finding is made at an early stage of the proceedings, under the 12(b)(6) standard.

For the foregoing reasons, Ms. Bledsoe has alleged a viable First Amendment retaliation claim.

### C. First Amendment Claims Against the Individual Defendants

Defendants argue that Ms. Bledsoe has failed to state plausible claims against each of the individual Defendants. To state a viable constitutional claim against each individual Defendant, the Complaint must demonstrate a causal link between the individual Defendants' actions and the alleged constitutional violation. Defendants argue that the factual allegations in the Complaint do not establish such

a link between any one Defendant and the constitutional violations alleged. The Court acknowledges that many of Ms. Bledsoe's allegations attribute conduct to the "Commissioners' Office," rather than to any individual Commissioner. Ms. Bledsoe argues that the Commissioners acted together to violate her First Amendment rights, but she does not always specify which Commissioners took which actions.

The Ninth Circuit has explained that, when multiple officers act to cause the plaintiff's alleged constitutional violation, each officer's "liability under section 1983 is predicated on his 'integral participation in the alleged violation.'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)); *see also Nicholson v. City of L.A.*, 935 F.3d 685, 691–92 (9th Cir. 2019) ("A police officer need not have been the sole party responsible for a constitutional violation before liability may attach."). "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Blankenhorn*, 485 F.3d at 481 n.12 (quoting *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004)). However, "it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id.*

In *Boyd v. Benton County*, the Ninth Circuit further explained what "integral participation" means. In that case, the court found that the plaintiff's Fourth Amendment rights had been violated when police officers used a flash-bang

grenade during the search of the plaintiff's home. *Boyd*, 374 F.3d at 780. There, the Ninth Circuit "reasoned that the use of the device was 'part of the search operation in which every officer participated in some meaningful way.'" *See Nicholson*, 935 F.3d at 692 (quoting *Boyd*, 374 F.3d at 780). Each officer "was aware of the decision . . . , did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id*. Therefore, each officer was liable under the Fourth Amendment, even though only one officer reached into the home and deployed the device. *Id*. Each officer's actions constituted integral participation in the constitutional violation.

On the other hand, the Ninth Circuit has held that an officer is not an integral participant in an unlawful arrest when she is "not present [at the arrest], and there is no evidence that [she] instructed the other detectives to arrest [the plaintiff] or that any of those detectives consulted with her before making the arrest." *Id*. (quoting *Torres v. City of L.A.*, 548 F.3d 1197, 1206 (9th Cir. 2008)).

Given the Ninth Circuit's precedent on integral participation, Ms. Bledsoe's Complaint must allege facts demonstrating that each Defendant was an integral participant, or had "some fundamental involvement," in the alleged constitutional violations. Again, the Court reiterates that it must take all the factual allegations in the Complaint as true and draw all reasonable inferences in favor of Ms. Bledsoe, as the instant motion is made pursuant to Rule 12(b)(6).

//

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 15

### Commissioner Blankenship

Ms. Bledsoe has asserted several factual allegations naming Commissioner Blankenship specifically, indicating that he was involved in the claimed constitutional violations. Perhaps most persuasive is Ms. Bledsoe's claim that Commissioner Blankenship was in contact with the Prosecuting Attorney's Office, and told them that "Ms. Bledsoe, who has no criminal record, should be convicted and sentenced to the maximum one year in jail and $5,000 fine for the Malicious Mischief charge." ECF No. 1 at 8. This specific factual allegation supports Ms. Bledsoe's claim that the Commissioners' Office was directing her prosecution. By contacting the Prosecuting Attorney's Office and making charging recommendations, Commissioner Blankenship had "some fundamental involvement" in (1) enforcing the malicious mischief law against Ms. Bledsoe in an unconstitutional manner and (2) retaliating against Ms. Bledsoe for her speech in violation of the First Amendment. As Ms. Bledsoe has demonstrated that Commissioner Blankenship was meaningfully involved in the alleged violations of her First Amendment rights, Ms. Bledsoe has stated viable constitutional claims against him.

### Commissioner Davis

Ms. Bledsoe's Complaint also contains several detailed allegations against Commissioner Davis. First, she alleges that Commissioner Davis, in concert with Commissioner Exner, called the police to report Ms. Bledsoe's note and shepherd's

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 16

crook delivery, prior to the chalking incident.  ECF No. 1 at 5.  Additionally, after the chalking incident, Commissioner Davis allegedly justified Ms. Bledsoe's prosecution.  *Id*. at 9.  In a public statement, he said that he was "concerned that Ms. Bledsoe was responsible for 'a pattern of stuff that [was] starting to happen'" during a politically sensitive and important time.  *See id*.  Commissioner Davis made this statement in response to a question about the "Commission's support of the criminal prosecution of Ms. Bledsoe."  *Id*.  Therefore, his response indicates that he, in his role as Commissioner, supported Ms. Bledsoe's prosecution.  Based on these factual allegations, a reasonable inference may be drawn that Commissioner Davis knew of, supported, and participated in the alleged constitutional violations.  Therefore, Ms. Bledsoe's Complaint states plausible constitutional claims against Commissioner Davis.

### Commissioner Exner

The Complaint contains only one factual allegation related to Commissioner Exner specifically.  It claims that Commissioner Exner called the police, with Commissioner Davis, when the Commissioners' Office received Ms. Bledsoe's note and shepherd's crook.  This single allegation involves Commissioner Exner's activities prior to the chalking incident that is the subject of this action.  Ms. Bledsoe's Complaint contains no other allegations against Commissioner Exner.  The remaining allegations that potentially implicate Commissioner Exner involve the actions of the "Commissioners' Office" as a whole.  While a reasonable

inference may be drawn that Commissioner Exner knew of the Office's actions, there simply are not enough factual allegations to conclude that Commissioner Exner approved of the actions taken against Ms. Bledsoe, or that Commissioner Exner was an integral participant in the alleged constitutional violations. Because Ms. Bledsoe has failed to allege sufficient facts showing Commissioner Exner's integral participation in the alleged constitutional violations, her Complaint fails to allege a plausible constitutional violation against Commissioner Exner. Therefore, Ms. Bledsoe's Section 1983 claims against Defendant Exner are dismissed without prejudice.

### Clerk Rowton

The factual allegations relating to Ms. Rowton are as follows: Ms. Rowton called law enforcement immediately after the chalking incident; she wanted to report the incident because it was not the first time that Ms. Bledsoe had "acted out against" the Commission; and Ms. Rowton may have removed Ms. Bledsoe's chalk messages before the contentious meeting, so that the intended viewers could not read them. ECF No. 1 at 6. Additionally, the Complaint states that the law enforcement dispatcher responding to Ms. Rowton's call told the responding officer that Ms. Rowton was "requesting contact," even though "it was just in chalk." *Id*. These factual claims illustrate that Ms. Rowton initiated the police response to Ms. Bledsoe's speech, and that her actions were motivated by Ms. Bledsoe's "acting out" against the Commission. When the facts are viewed in the

light most favorable to Ms. Bledsoe, and when all reasonable inferences are drawn in her favor, Ms. Rowton knew of and meaningfully participated in the alleged First Amendment violations. Therefore, Ms. Bledsoe's Complaint alleges plausible First Amendment violations against Defendant Rowton.

### D. The County's Liability Under *Monell*

Defendants argue that the Section 1983 claims against Defendant Ferry County must be dismissed, pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1977). *Monell* made clear that local governments are "persons" for the purposes of 42 U.S.C. § 1983. *Id*. at 690. Defendants may therefore sue local governments for constitutional violations under the statute. However, local governments may not be held liable on a theory of *respondeat superior* for the actions of their employees and agents. *Id*. Instead, the local government's actions must have caused the constitutional violation. The Supreme Court explained that there must be a local policy, practice, or custom that caused the plaintiff's injury. *Id*. at 694.

Since *Monell* was decided, the Supreme Court has held that "an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprontik*, 485 U.S. 112, 123 (1988); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 181–83 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal

policymakers under appropriate circumstances.").  In other words, a county may be held liable for an isolated constitutional violation inflicted by officials with "final policymaking authority" with respect to the action ordered.

Whether an official has "final policymaking authority" is a question of state law.  *City of St. Louis*, 485 U.S. at 123.  "The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms." *Id*. at 124.  When an official's discretion regarding policy decisions is not meaningfully constrained or subject to review by a superior, then the policymaker likely has "final policymaking authority." *See id*.  Additionally, "No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur*, 475 U.S. at 480 (citing *Owen v. City of Independence*, 445 U.S. 622 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing) and *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) (City Council canceled license permitting concert because of dispute over content of performance)).  "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id*.

Ms. Bledsoe alleges that the Commission decided to seek her prosecution because of her political ideas and speech. She alleges that the County Commissioners, who make up the County's legislative body, acted together to censor her and to direct her prosecution. *See* RCW 36.32.120. Defendants argue that the County Commissioners were not final policymakers with respect to their actions against Ms. Bledsoe. Therefore, those actions cannot be attributed to the County. *See* ECF No. 10 at 8.

The Court must therefore decide whether the Plaintiff has alleged sufficient facts to support a reasonable inference that the Commissioners were acting as policymakers when requesting, and allegedly directing, Ms. Bledsoe's prosecution. As the Supreme Court has explained, even one decision by a properly constituted legislative body "unquestionably constitutes an act of official government policy." *Pembaur*, 475 U.S. at 480. Additionally, as Ms. Bledsoe points out, Washington law provides that the Commission shall, "Have the care of the county property . . . and in the name of the county prosecute and defend all actions for and against the county . . . ." RCW 36.31.120(6). Defendants have not pointed to state law indicating that the Commissioners' actions were meaningfully constrained by a superior, or that their decisions with respect to Ms. Bledsoe would be reviewed by a superior policymaking official.

By arguing that the County Commissioners were not acting in their role as final policymakers, Defendants seem to suggest that the Prosecuting Attorney's

Office had final policymaking authority with respect to the charges brought against

Ms. Bledsoe.  Therefore, the Court examines the relationship between the

Prosecuting Attorney's Office and the County Commissioners' Office in Ferry

County.  Upon turning to Washington state law, the Court found few cases that

illustrate the relationship between prosecuting attorneys' offices and county

commissioners' offices in Washington.  However, in *State ex rel. Banks v.*

*Drummond*, the Washington State Supreme Court discussed the relationship

between the prosecuting attorney and the county commission briefly.  385 P.3d

769 (Wn.2d 2016).  It appears from *Banks* that the county commissioners' office

exercises control over the prosecuting attorney's office through governance of the

office's size and budget.  As the State Supreme Court explained:

> The Board's consent is required to establish and fund all unelected employee
> positions, including those in the prosecuting attorney's office.  RCW
> 36.16.070 ("In all cases where the duties of any county office are greater
> than can be performed by the person elected to fill it, the officer may employ
> deputies and other necessary employees with the consent of the board of
> county commissioners.  The board shall fix their compensation . . . .").

*Banks*, 385 P.3d at 773.

The *Banks* Court continued to explain that there had been "professional

disagreements about policy and about budgets from time to time" between the

county commission and the prosecuting attorney's office in that matter; the county

commission had decided to decrease funding to the prosecuting attorney's office,

granting funding for the highest-priority criminal staff position only.  *Id*.  The

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 22

Washington State Supreme Court's discussion in *Banks* indicates that Defendants in this case have the ability to set, or at least influence significantly, policy in the Prosecuting Attorney's Office.

Moreover, Washington law dictates that the prosecuting attorney in each county is the "legal advisor of the legislative authority" who gives "his or her written opinion when required by the legislative authority," and who prosecutes "all criminal and civil actions in which the state or the county may be a party." RCW 36.27.020(1), (4). Therefore, Washington law indicates that the prosecuting attorney in each county, at least to some extent, answers to the legislative authority, the County Commission.

The Court notes that the issue of final policymaking authority, and the relationship between the Prosecuting Attorney's Office and Ferry County Commissioners' Office, was not thoroughly briefed. However, given this Court's review of Washington state law and Ms. Bledsoe's Complaint, the Court finds that Ms. Bledsoe has alleged sufficient facts to demonstrate that the County Commissioners were policymaking officials, whose actions may constitute County policy pursuant to *Monell* in this matter. Therefore, Ms. Bledsoe's *Monell* claim against the County survives Defendants' Motion to Dismiss.

### E. Qualified Immunity

The Court now considers the qualified immunity defenses raised by Commissioner Blankenship, Commissioner Davis, and Secretary Rowton. The

Court does not consider the qualified immunity defense raised by Commissioner Exner, as the Section 1983 claims against her already have been dismissed.

Government officials are entitled to qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The purpose of qualified immunity is to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme Court has laid out a two-part test for resolving qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. First, the court must decide whether the defendant's conduct violated a constitutional right. *Id.* at 201. Second, the court must determine whether the identified constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. As part of the second step, the court also must consider whether the defendant's interpretation of the law was reasonable given the facts with which the defendant was presented. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). If the court finds that the constitutional right was clearly established, but that the defendant made a reasonable mistake in applying the law, then the defendant is entitled to qualified immunity. *Id.*

Because the Court is deciding qualified immunity in the context of a Rule 12(b)(6) motion to dismiss, the Court must take all of the factual allegations in the Complaint as true and construe the pleadings in the light most favorable to Ms. Bledsoe. *Henshaw v. Daugherty*, 125 Fed. Appx. 175, 176 (9th Cir. 2005) (citing *Grant v. City of Long Beach*, 315 F.3d 1081, 1088–89 (9th Cir. 2002)); *see also Manzarek*, 519 F.3d at 1031 (explaining motion to dismiss standard). If Ms. Bledsoe cannot overcome qualified immunity based on her allegations, then Defendants are entitled to qualified immunity, and the court may dismiss on those grounds. *See id*.

### *Violation of a Constitutional Right*

The Court first decides whether Ms. Bledsoe's Complaint alleges a constitutional violation against Defendants. As this Court already has explained, Ms. Bledsoe has alleged plausible claims under the First Amendment. Moreover, the Court already has found that Ms. Bledsoe's Complaint states plausible constitutional claims against Commissioners Blankenship and Davis, and against Secretary Rowton; Ms. Bledsoe properly alleged that each of these Defendants were integral participants in the alleged constitutional violations.

### *Clearly Established Law*

Second, the Court must consider whether the asserted First Amendment rights were clearly established at the time of the violation. Specifically, Ms. Bledsoe has alleged that the County Commissioners acted against her, in order to chill her

political speech in a public forum, before an important public meeting. It is clearly established that public officials cannot take action with the intent to "retaliate against, obstruct, or chill the plaintiff's First Amendment rights. *Ariz. Students' Ass'n.*, 824 F.3d at 858. Indeed, it is settled law that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman*, 547 U.S. at 256; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 716–17 (9th Cir. 2012). Therefore, the First Amendment rights that Ms. Bledsoe asserts were clearly established.

As Ms. Bledsoe has plausibly alleged that Defendants Blankenship, Davis, and Rowton violated her clearly established First Amendment rights, the Court finds that, at this stage of the proceedings, these Defendants are not entitled to qualified immunity.

## II. State Claim: Malicious Prosecution

Ms. Bledsoe also has brought a claim of malicious prosecution, premised on Washington state law. A successful claim of malicious prosecution under Washington law requires the plaintiff to show the following:

(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant;

(2) that there was want of probable cause of the institution or continuation of the prosecution;

(3) that the proceedings were instituted or continued through malice;

(4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and

(5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Bender v. City of Seattle*, 664 P.2d 492, 500 (Wash. 1983).

The Washington State Supreme Court has explained, "Malice and want of probable cause are the gist of the action." *Id.* The malice prong is satisfied when the plaintiff shows that the official acted with an improper motive or "in a reckless disregard of the rights of the plaintiff." *Id.* (quoting *Peasley v. Puget Sound Tug & Barge Co.*, 125 P.2d 681, 689 (Wash. 1942)). The court analyzes the existence of probable cause under an objective, reasonable person standard. *Id.* at 502. "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed." *Gem Trading Co. v. Cudahy Corp.*, 603 P.2d 828 (Wash. 1979). Probable cause must exist through the entire prosecution. *Rodriguez v. City of Moses Lake*, 243 P.3d 552, 554 (Wash. Ct. App. 2010). If the criminal proceedings against the plaintiff were dismissed or terminated in the plaintiff's favor, then the plaintiff has established a prima facie case that probable cause was lacking. *Id.*

First, Ms. Bledsoe was required to plead that Defendants instituted or continued her prosecution. Ms. Bledsoe alleged that Ms. Rowtown, Clerk of the

Board of Commissioners, telephoned Ferry County law enforcement when Ms. Bledsoe began chalking the walkway. ECF No. 1 at 6. In response, law enforcement allegedly stated, "it was just in chalk, but they're requesting contact." *Id*. When reasonable inferences are drawn in Ms. Bledsoe's favor, it appears that Ms. Rowton called law enforcement and asked them to make contact with Ms. Bledsoe. Moreover, Ms. Bledsoe alleges that Commissioner Blankenship contacted the Prosecuting Attorney's Office before and after the complaint against Ms. Bledsoe was filed. *Id*. at 8. "[U]pon belief" Commissioner Blankenship "influenced that office to criminally prosecute Ms. Bledsoe's free speech." *Id*. Ms. Bledsoe claims that Commissioner Blankenship told the Prosecuting Attorney's Office that Ms. Bledsoe should be convicted and receive the maximum penalty. *Id*. She also alleges that an anonymous "concerned citizen" called the Prosecuting Attorney's Office with advice on charging and venue for the criminal proceedings against her, suggesting that the anonymous citizen was acting at the direction of the Commissioners. *Id*.

Additionally, when asked publicly about the Commissions' support of Ms. Bledsoe's prosecution, Commissioner Davis responded that he was concerned that Ms. Bledsoe was responsible for a "pattern" of "stuff" that was beginning to happen during a sensitive political time. *Id*. at 9. These statements indicate that Commissioner Davis supported Ms. Bledsoe's prosecution and censorship. When viewed in the light most favorable to Ms. Bledsoe, the factual allegations in the

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 28

Complaint support her argument that the Commissioners directed her prosecution, to prevent her from speaking out against them. Therefore, Ms. Bledsoe has alleged sufficient facts to illustrate that her prosecution was initiated or continued by Defendants.

Next, Ms. Bledsoe must plead that there was want of probable cause for the institution or continuation of her prosecution. Ms. Bledsoe's malicious mischief charge was dismissed by Judge Brown, who found that writing in chalk on a sidewalk does not constitute property damage, an essential element of the crime with which Ms. Bledsoe was charged. Such a dismissal establishes a prima facie case of want of probable cause. *See Rodriguez*, 243 P.3d at 554.

Defendants argue that the Prosecutor's Office made a charging mistake and that Ms. Bledsoe should have been charged with malicious mischief under RCW RCW 9A.48.090(b), which does not require property damage. Defendants argue that there was probable cause to prosecute Ms. Bledsoe under subsection (b), and therefore Ms. Bledsoe's malicious prosecution claim must fail. Defendants essentially argue that, because the state could have charged Ms. Bledsoe under subsection (b) of the statute, there was continued probable cause to prosecute her under subsection (a). However, to decide if probable cause exists throughout a prosecution, the Court naturally must look to the charges actually filed and pursued, not hypothetical, unfiled charges for which probable cause may exist. The state did not have probable cause to continue its prosecution under RCW

9A.48.090(a), and the state never amended its charges against Ms. Bledsoe, despite the alleged charging mistake. Under these facts, Ms. Bledsoe has pleaded want of probable cause. *See Rodriguez*, 243 P.3d at 554.

Furthermore, even if the Prosecuting Attorney's Office meant to charge Ms. Bledsoe with violating subsection (b) rather than subsection (a), it is not clear that probable cause existed to prosecute Ms. Bledsoe under subsection (b). Subsection (b) of the statute prohibits writing or marking "on any public or private building or other structure or any real or personal property owned by another person unless the person has obtained the express permission of the owner or operator of the property . . . ." RCW 9A.48.090(b). This subsection clearly forbids drawing on public buildings, but Ms. Bledsoe alleges that she wrote on a public walkway, not a building. The statute also forbids chalking any real property owned by another person, but, at this point, the parties have not indicated whether the walkway was owned by another "person" within the meaning of RCW 9A.48.090(b). It is unclear from the briefing and from the Court's review of the case law whether there was probable cause to seek the prosecution of Ms. Bledsoe under subsection (b). However, because Ms. Bledsoe was not prosecuted under subsection (b), the Court need not make findings as to whether there was probable cause to prosecute Ms. Bledsoe under that subsection of the statute.

Third, Ms. Bledsoe must allege that the proceedings were initiated or continued through malice. As explained above, Ms. Bledsoe has alleged specific

ORDER RESOLVING DEFENDANTS'
MOTION TO DISMISS ~ 30

facts showing that the Commissioners' Office retaliated against her for her chalked message by directing her prosecution in violation of her First Amendment rights. These allegations constitute malice, or "a reckless disregard" of Ms. Bledsoe's rights. *See Bender*, 664 P.2d at 500 (quoting *Peasley*, 125 P.2d at 689). Fourth, Ms. Bledsoe must allege that the criminal proceedings were terminated in her favor, which she has done by explaining that Judge Brown granted her motion to dismiss. *Id*. at 8. Finally, Ms. Bledsoe must plead that she suffered damages as a result of the prosecution. Ms. Bledsoe alleges that she was required to submit to restrictions on residency at her arraignment while her mother was dying in Oregon. She also alleges that she has suffered financial losses and mental pain and anguish. ECF No. 1 at 14. Therefore, Ms. Bledsoe has alleged damages.

Because Ms. Bledsoe has pleaded a plausible claim for malicious prosecution under Washington State law, her malicious prosecution claim survives Defendants' Motion to Dismiss. However, again, the Court must consider whether Ms. Bledsoe's Complaint has alleged a viable claim against each Defendant. For reasons this Court already has expressed, Ms. Bledsoe has not alleged enough facts to suggest that Commissioner Exner took any action in response to her chalking. Therefore, Ms. Bledsoe's malicious mischief claim against Commissioner Exner is dismissed, with leave to amend.

Accordingly**, IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, **ECF No. 8**, is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claims against Defendant Exner are **dismissed without prejudice**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** January 23, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge