1

**HON. ROSANNA MALOUF PETERSON**

2

Andrew S. Biviano, WSBA #38086
Breean L. Beggs, WSBA #20795
Mary Elizabeth Dillon, WSBA #50727
PAUKERT & TROPPMANN, PLLC
522 W. Riverside Ave, Suite 560
Spokane, WA 99201
509-232-6670

3

4

5

6

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8

9

| JAINA BLEDSOE, a single woman, | NO. 2:19-cv-00227 RMP |
| Plaintiff, | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | Hearing date: 10/9/2020, 1:30 P.M. |
| FERRY COUNTY, WASHINGTON, et al., | WITH ORAL ARGUMENT |
| Defendants. | Spokane, WA |

10

11

12

13

14

15

16

## I.    INTRODUCTION

17

Ferry County used its police power and the threat of imprisonment to silence a

18

citizen's political speech. Sworn deposition testimony and documentary evidence leave

19

no genuine question of what Defendants did or why they did it. Defendants concede

20

that they would not normally seek criminal penalties for writing in chalk on the

21

sidewalk but did so here to deter Plaintiff from "escalating" her criticism of Ferry

22

County officials. As such, the Court should grant summary judgment to Plaintiff.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 1

## II.     FACTUAL BACKGROUND

The facts pertinent to this motion are set forth in Plaintiff's Statement of Material Facts ("SMF") filed herewith and are summarized here. In 2017, Ferry County Commissioner Mike Blankenship publicly described community members advocating for a non-motorized recreational trail in the county as "sheep" and "jackasses." SMF 1. Plaintiff regularly exercises her First Amendment right to free speech by commenting on local political affairs through the purchase of advertising space in the local newspaper which she uses to write opinion pieces, including criticizing Commissioner Blankenship for his use of insults and pejoratives when referring to his constituents. SMF 2. Mr. Blankenship later responded in the same newspaper, refusing to apologize and stating: "If the shoe fits, wear it!" SMF 3.

On October 17, 2017, Ms. Bledsoe delivered a note to the Commission Building, along with a shepherd's crook, sarcastically criticizing Commissioner Blankenship's reference to his constituents as "sheep." SMF 4-5. The Ferry County Commissioners Office called the police and reported Ms. Bledsoe's gift and note as "harassment as of statements that were posted on Facebook," despite Commissioner Davis's concession in his deposition that "there was nothing illegal" about what Ms. Bledsoe had done. SMF 6-7. Commissioner Davis testified that he intercepted and got rid of Plaintiff's note, even though it had been delivered to Commissioner Blankenship, because Davis thought the message was going to be "distracting and controversial." SMF 7.

On February 26, 2018, just prior to a public meeting to address the recreational trail issue, Ms. Bledsoe again responded to Commissioner Blankenship's derogatory

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

language towards his constituents by writing with temporary sidewalk chalk the phrases "You are not sheep" and "You are not jackasses" on the public walkways leading to the Commission building where attendees would see them. SMF 8-9. The Board uses this same location to communicate with the public by posting notices on the doors. SMF 10. The chalk caused no damage and did not impair access. SMF 11.

Upon learning of Ms. Bledsoe's chalked messages, the consensus decision of the Board of Commissioners was to direct its Clerk, Ms. Rowton, to call the police to report Ms. Bledsoe's conduct, as well as remove the messages before anyone else could see them. SMF 12-17. At the direction of the Board of Commissioners, Ms. Rowton told the responding officer that she was reporting the chalking to the police because Plaintiff has "acted out against" the commissioners previously. SMF 14-15. Defendants Rowton and Blankenship testified that the Board of Commissioners decided to call the police because of the prior actions of Ms. Bledsoe and because they were concerned about her behavior "escalating."  SMF 16. The Board of Commissioners directed that the words written by Plaintiff be immediately removed; Commissioner Davis testified that part of the reason that he directed it be cleaned up so quickly was to prevent the public from seeing it. SMF 17.

Ms. Bledsoe is not the only person who has placed chalk on public property in Ferry County but is the only person against whom police reports and criminal charges have been filed. SMF 21. Defendants Blankenship and Davis testified that they would not call the police—or are not sure if they would call the police—if they observed other people writing in chalk on county property. SMF 19-20.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 3

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

Defendants' report of criminal conduct to the police led to criminal charges of malicious mischief against Plaintiff. SMF 18, 22-26.  The Board of County Commissioners is both the legislative and executive branch of government for Ferry County and sets the budget for the departments, giving it the ability to influence the policies and actions of the prosecutor's office. SMF 18. The Ferry County Prosecutor, Kathryn Burke, testified that her office would not have filed against Plaintiff but for the actions of Defendants in calling the police and seeking criminal charges. SMF 22. Tabbatha Denning, the Deputy Prosecutor who prosecuted the case, testified that it was her professional judgment that the facts of the chalking incident did not warrant criminal prosecution and that her initial opinion upon reading the police report was that it was "silly." SMF 23-24. Ms. Denning testified that it was only because she saw that the commissioners were listed as the victims that she took the charging decision to her superior, Ms. Burke, and that she believed it was the desire of the Board of County Commissioners to prosecute Plaintiff that outweighed her professional judgment and led to the filing of charges. SMF 24-25. She also testified that she believes the content of Plaintiff Bledsoe's speech was "certainly part of" the reason she was prosecuted, and she "believe[s] there is some possibility" that the prosecution was due to Ms. Bledsoe's history of criticizing the county commissioners. SMF 26.

After charges were filed, Commissioner Blankenship told Deputy Prosecutor Denning that he thought the appropriate punishment for Ms. Bledsoe's chalking was the maximum allowed by law: 364 days in jail and a $5,000 fine. SMF 27. When asked whether the maximum sentence was a "a reasonable response to Ms. Bledsoe's chalk

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 4

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1  on the sidewalks," Ms. Denning testified: "Absolutely not. It's very rare that I get folks

2  with gross misdemeanors that end up doing the maximum, and it's rare that I get

3  victims that want that as well." SMF 28.

4      On August 20, 2018, the Ferry County District Court granted Ms. Bledsoe's

5  *Knapstad* Motion to Dismiss the charge of Malicious Mischief, finding that there were

6  no material disputes of fact and they did not establish a prime facie case of guilt, even

7  viewing all evidence and making all inferences in the light most favorable to the State.

8  SMF 30. In his decision, Judge Thomas Brown wrote: "All of this is to say this is not

9  about chalk. This is about a personal dislike for a citizen of Ferry County."  SMF 31.

### III.    ARGUMENT

#### A.    <u>The Summary Judgment Standard is Met</u>.

12      Summary judgment is appropriate if "there is no genuine dispute as to any

13  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

14  P. 56(a). The deciding court must view the evidence, including all reasonable

15  inferences, in favor of the non-moving party. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th

16  Cir. 2015). "An issue of material fact is genuine if there is sufficient evidence for a

17  reasonable jury to return a verdict for the non-moving party." *Id.* (quoting *Thomas v.*

18  *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).

19      There is no genuine dispute as to any facts that are material to this motion for

20  summary judgment. Even viewing all facts and reasonable inferences in favor of

21  Defendants, there is no factual basis on which a reasonable jury could return a verdict

22  in favor of Defendants.

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**B.**  **Defendants Violated Section 1983 When They Censored Plaintiff's Protected Speech, in Violation of the First Amendment.**

In order to prevail in her cause of action for violation of First Amendment rights under 42 U.S.C. § 1983, Plaintiff must show "(1) a violation of rights protected by the Constitution or created by a federal statute, (2) proximately caused (3) by the conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947, F.2d 1418, 1420 (9th Cir. 1991). Plaintiff has met this burden as a matter of law because there is no genuine dispute of fact that Defendants infringed upon Plaintiff's First Amendment right to free speech by removing her chalk statements from the sidewalk before her intended audience could view them and by initiating her prosecution for malicious mischief in retaliation for her chalked statements.

Plaintiff's chalked expression on February 26, 2018, was unquestionably political speech protected by the First Amendment. Plaintiff was responding to her elected representative's rhetoric regarding a politically contentious issue—the creation of a non-motorized recreational trail. SMF 1-3. This is precisely the kind of political debate that the First Amendment is intended to protect. "State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment." *Sloman v. Tadlock*, 21 F.3d 1462, 1469-70 (9th Cir. 1994).

The placement of the chalk was on a public sidewalk/walkway leading into the commissioner building where the trail issue was to be debated: a plainly public forum. SMF 8-9. Indeed, Plaintiff placed the chalking precisely where Ferry County posts its communications with the public on the door of the building. SMF 10. There is no

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 6

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

genuine question this location is a public forum. "Public streets and walkways are the 'archetype of a traditional public forum.'" *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988).

Content-based regulations and restrictions on speech in public fora are presumptively unconstitutional. *Foti*, 146 F.3d at 637. The restriction that Defendants placed on Plaintiff's speech—to promptly remove it and report her to the police—were unquestionably content-based. There exists no county law or regulation prohibiting the placement of chalk at the entryway to the Commission building; Defendants made *ad hoc* decisions on their own initiative as County officials. Defendants explicitly stated that they respond differently to chalked speech on public property based on speaker and content:

- Defendant Blankenship testified that he would not call law enforcement to report people writing with chalk on public property in other circumstances (SMF 19) but did so in this case because he was concerned about Plaintiff "escalating" her speech from the newspaper to the sidewalk, and acknowledged that calling the police is meant to deter conduct. SMF 16.

- Defendant Davis testified that he did not call police on other occasions that he saw chalk on public property and is "not sure" if he would call the police if other people chalked friendly messages at the same location that Ms. Bledsoe did, although he stated he probably would call the police if someone wrote "Black Lives Matter" in chalk in the same location that Ms. Bledsoe did. SMF 20.

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1
2
3

- Defendant Rowton, at the direction of the other Defendants, told the police that they reported this conduct because Ms. Bledsoe "had acted out against them before" and was "escalating."  SMF 13-16.

4

Indeed, Defendants have freely conceded that their intent in censoring and

5

prosecuting Ms. Bledsoe was to chill her political expression. Defendants had already

6

censored Plaintiff's speech once before when Defendant Davis intercepted a note

7

Plaintiff had delivered to Defendant Blankenship and called law enforcement to report

8

this as harassment and remove the note, because he considered it "distracting and

9

controversial." SMF 4-7. Defendant Davis acknowledged that he had the same

10

motivation in ordering the immediate removal of Plaintiff's chalked speech: he

11

testified that part of the reason that he directed it be cleaned up so quickly was to

12

prevent the public from seeing it. SMF 17.

13

As the Court has already analyzed and discussed, Defendants cannot argue that

14

their conduct was legal because Washington's malicious mischief statute prohibits

15

drawing on sidewalks in chalk. ECF No. 20. Because the Defendants have conceded

16

that they would not seek to enforce this statute against other people but chose to

17

enforce it against Plaintiff based on the content of her political speech, the malicious

18

mischief statute is unconstitutional as it was applied to Plaintiff.

19

There is thus no genuine dispute that the removal and criminal reporting of

20

Plaintiff's protected political speech was a violation of rights protected by the

21

Constitution or created by a federal statute, proximately caused by Defendants, all of

22

whom are "persons" under the law. There is also no question that Defendants were

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

acting under color of state law, as they took these actions as county officials purporting to act in the performance of their official duties: the commissioners made the decisions collectively as a board, during a public meeting session, and Ms. Rowton carried out her actions in her role as Clerk. SMF 13-15. The Court should grant summary judgment for Plaintiff on her claim of censorship in violation of the First Amendment.

## C.    Defendants Violated Section 1983 When They Retaliated Against Plaintiff For Engaging in Protected Speech, in Violation of the First Amendment.

There is also no genuine question that Defendants violated the First Amendment when they retaliated against Plaintiff for exercising her right to free speech. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250 (2006); *Ariz. Students' Ass'n v. Ariz. Bd. Of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). The elements of a First Amendment retaliation claim are:

(1) Plaintiff engaged in constitutionally protected activity;

(2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and

(3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and the intent to chill speech.

*Ariz. Students' Ass'n*, 824 F.3d at 858 (quoting *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016). Additionally, when the defendant is not the prosecuting attorney in

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 9

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1   the underlying criminal case, the plaintiff must show that the defendant "induced the

2   prosecutor to bring charges that would not have been initiated without his urging."

3   *Hartman*, 547 U.S. at 262.

4       While plaintiffs in First Amendment retaliation cases are often required to also

5   plead and prove a lack of probable cause, this Court recently observed that the

6   Supreme Court has clarified this requirement. ECF No. 20, p. 10, citing *Nieves v.*

7   *Bartlett*, 139 S. Ct. 1715, 1727 (2019). A plaintiff is not required to prove a lack of

8   probable cause when objective evidence demonstrates that plaintiff was arrested or

9   prosecuted "when otherwise similarly situated individuals not engaged in the same sort

10  of protected speech had not been." *Nieves,* 139 S.Ct. at 1727.

11      There is no genuine question that Plaintiff meets all required elements of her

12  retaliation claim. Ms. Bledsoe's writing of political messages in chalk in a public

13  forum is a constitutionally protected activity. As discussed in section B, *supra*, Ms.

14  Bledsoe's chalking conveyed a clear political message relating to ongoing

15  governmental actions and statements, shortly before and directed at those attending a

16  public meeting, and expressed this message in a clear public forum, as it was on a

17  public walkway at the door where the public enters and where Ferry County posts

18  written governmental communication with the public. SMF 1-3, 8-11.

19      The second element is met because there is no genuine question that Defendants'

20  actions would "chill a person of ordinary firmness" from continuing to engage in the

21  protected activity. The Ferry County Commissioner's Office called the police and

22  sought criminal charges against Ms. Bledsoe for her protected speech; Mr. Blankenship

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 10

acknowledged that calling the police is meant to deter conduct. SMF 13-16. The

Commissioner's Office encouraged the prosecution, which would not have occurred

but for the request and referral from the Commissioner's Office. SMF 18-25.

Commissioner Blankenship asked the deputy prosecuting attorney to seek the harshest

penalty possible under the malicious mischief statute (364 days in jail), a request the

deputy prosecuting attorney considered unreasonable and rare. SMF 27-28. As the

Court has already expressed: "Facing criminal prosecution and a possible penalty of up

to one year in jail would chill a person of ordinary firmness from continuing to

exercise her right to free speech." ECF No. 20, p. 11, ll. 12-14.

　　　The third element (substantial motivating factor) is beyond dispute because

Defendants openly conceded on multiple occasions that they would not ordinarily have

called the police or pressed charges based on sidewalk chalk but did so in this instance

to deter Ms. Bledsoe from escalating her political speech.  When speaking to the police

on behalf of the County Commissioners, Ms. Rowton stated that they wouldn't

ordinarily report the incident to the police but "this person has acted out against us

before." SMF 13-15. All three individual Defendants—Davis, Blankenship, and

Rowton—testified that the response to Plaintiff's chalking was motivated by a desire to

prevent the "escalation" of Plaintiff's political rhetoric.  SMF 7, 16. "Preventing

escalation" is, of course, simply another way of saying "deterring" or "chilling"

speech. There is no genuine question that there was a nexus between Defendant's

actions and the intent to chill speech—when all Defendants have frankly admitted that

the *entire purpose* of their actions was to chill Plaintiff's protected speech.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 11

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1    Fourth, Plaintiff must show that Defendants "induced the prosecutor to bring

2 charges that would not have been initiated without [their] urging." *Hartman*, 547 U.S.

3 at 262. Both the Prosecuting Attorney, Ms. Burke, and the Deputy Prosecuting

4 Attorney, Ms. Denning, testified that their office would not have brought charges but

5 for the referral and urging of the Commissioner's Office. SMF 22-25. Ms. Burke

6 acknowledged that others have chalked on the sidewalks in Republic without being

7 prosecuted, with the only difference in Ms. Bledsoe's case being that the

8 Commissioner's Office called the police and sought prosecution, while other

9 landowners did not. SMF 22. Ms. Denning went further and testified that the

10 prosecution of Ms. Bledsoe was "silly," that she believed it was the desire of the Board

11 of County Commissioners to prosecute Plaintiff that outweighed her professional

12 judgment and led to the filing of charges, but she felt compelled to do so because of the

13 Commissioner's referral. SMF 23-25. Ms. Denning also believes that the content of

14 Plaintiff Bledsoe's speech was "certainly part of" the reason she was prosecuted, and

15 that "there is some possibility" that the prosecution was due to Ms. Bledsoe's history

16 of criticizing the county commissioners. SMF 26. It is thus beyond dispute that

17 Defendants induced the prosecutor to bring charges that would not have been initiated

18 without their urging.

19    The final element is a lack of probable cause. The Court has already determined

20 under the 12(b)(6) standard that Ms. Bledsoe is not required under *Nieves* to plead and

21 prove a lack of probable cause assuming she can prove the allegation that that chalking

22 on public sidewalks rarely, if ever, is prosecuted. ECF No. 20, p. 13, ll. 9-13. Ms.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 12

Bledsoe has proven this allegation beyond dispute, as all Defendants and the County

Prosecutor have conceded that they are unaware of anyone else in Ferry County ever

being prosecuted for chalking on a public sidewalk or walkway, and that they would

not even consider or seek prosecution in most instances. SMF 19-22. This case is thus

analogous to the jaywalking example presented in *Nieves*, in which law enforcement

typically exercises its discretion to not enforce the statute. 139 S.Ct. at 1727.

If required to prove a lack of probable cause, Ms. Bledsoe has done so. The

charges against her were dismissed for lack of probable cause because she did not

damage any property, which is an essential element of RCW 9A.48.090(a), the crime

for which she was charged. SMF 30. Defendants cannot deny this fact so instead argue

that probable cause existed under subsection (b) of the statute. This argument fails for

two reasons. First, crimes that were not charged are irrelevant to this analysis. Second,

Ms. Bledsoe did not violate subsection (b) of the statute either, as it only prohibits

writing on a "building or other structure" and does not prohibit writing on sidewalks or

walkways. RCW 9A.48.090(b). It has thus been established that there was a lack of

probable cause to bring the criminal charge that was brought against Plaintiff.  The

Court should grant summary judgment for Plaintiff on her claim of retaliating against

her for engaging in protected free expression under the First Amendment.

**D.    Ferry County is Liable for Actions Taken By Official Policymakers.**

Section 1983 provides a cause of action against any "person" who, under color

of law, deprives any other person of rights, privileges, or immunities secured by the

Constitution or laws of the United States. The term "person" includes municipalities

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1   such as Ferry County. *Monell v. Dep't of Soc. Serv. of N.Y.,* 436 U.S. 658, 694, (1978).

2   A municipality cannot, however, "be held liable under § 1983 on a respondeat superior

3   theory." *Id.* at 691. Liability may attach to a municipality only where the municipality

4   itself causes the constitutional violation through "execution of a government's policy or

5   custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

6   said to represent official policy." *Id.* at 694; *see also Pembaur v. City of*

7   *Cincinnati,* 475 U.S. 469, 479-80 (1986).

8          The Supreme Court has held that "an unconstitutional governmental policy

9   could be inferred from a single decision taken by the highest officials responsible for

10   setting policy in that area of the government's business." *City of St. Louis v.*

11   *Praprontik*, 485 U.S. 112, 123 (1988). "No one has ever doubted . . . that a

12   municipality may be liable under § 1983 for a single decision by its properly

13   constituted legislative body—whether or not that body had taken similar action in the

14   past or intended to do so in the future—because even a single decision by such a body

15   unquestionably constitutes an act of official government policy." *Pembaur*, 475 U.S. at

16   480 (citing *Owen v. City of Independence*, 445 U.S. 622 (1980) and *Newport v. Fact*

17   *Concerts, Inc.*, 453 U.S. 247 (1981)). "[W]here action is directed by those who

18   establish governmental policy, the municipality is equally responsible whether that

19   action is to be taken only once or to be taken repeatedly." *Id.*

20          There is no genuine question that Ferry County is liable in this case under

21   *Monell.* The decision to contact the police to initiate the criminal prosecution of

22   Plaintiff because she "had acted out against them before" was made collectively and

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 14

unanimously by the Ferry County Commissioners while they were engaged in a legislative meeting session. SMF 13-16. The Board of County Commissioners is both the legislative and executive branch of government for Ferry County. SMF 18. The actions taken by, or on behalf of, the Commissioners are plainly the actions of the final policymaking authorities whose edicts or acts may fairly be said to represent official policy in Ferry County.

Nor can Defendants claim that the prosecuting attorney had the sole policymaking authority to bring charges. As the Court has already observed, a county commissioners' office exercises control over the prosecuting attorney's office through governance of the office's size and budget. ECF No. 20, p. 22, citing *State ex rel. Banks v. Drummond*, 385 P.3d 769, 773 (Wn.2d 2016). Commissioner Davis made the same observation that the commission has the theoretical ability to influence the prosecutor's office through the budget, and also that the prosecutor serves as the board's attorney. SMF 18.

Moreover, the County Prosecutor Kathryn Burke testified that the charges would not have been filed but for the actions of Defendants. SMF 22. Deputy Prosecutor Denning bluntly stated that she believe the prosecution of Ms. Bledsoe was "silly," that the desire of the Board to prosecute Plaintiff outweighed her professional judgment and led to the charges, and she felt compelled to do so because of the Commissioner's referral. SMF 23-25. The county commissioners made the decisions to censor Plaintiff's speech and report her to the police, thereby causing her to face criminal charges. The actions and decisions of the commissioners make Ferry County liable.

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1

### E.    The Named Defendants are Individually Liable.

2
3
4
5
6
7

"Section 1983 provides a tort remedy against "[e]very person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012). To be individually liable, a defendant must have had "personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

8
9
10
11
12
13
14
15
16

The Ninth Circuit has explained that, when multiple officers act to cause the plaintiff's alleged constitutional violation, each officer's "liability under section 1983 is predicated on his 'integral participation in the alleged violation.'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)). "Integral participation does not require that each officer's actions themselves rise to the level of a constitutional violation . . . but it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id.*, 485 F.3d at 481 n.12 (quoting *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004)).

17
18

Each named individual defendant had some fundamental involvement in the conduct that caused the violation of Plaintiff's First Amendment rights:

19
20
21
22

1.    Commissioner Blankenship was part of the consensus decision of the three County Commissioners to call the police to report Plaintiff for criminal conduct. SMF 13. He acknowledged that his motivation for this was to deter Plaintiff's political speech from escalating. SMF 16. The sworn testimony of Deputy Prosecutor Denning,

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 16

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1    supported by her contemporaneous notes, is that Commissioner Blankenship told her

2    that he thought the appropriate punishment for Ms. Bledsoe's chalking was the

3    maximum allowed by law: 364 days in jail and a $5,000 fine. SMF 27. There is no

4    genuine dispute on this point, as Mr. Blankenship no longer recalls what he said. *Id.*

5        2.    Commissioner Davis was also part of the consensus decision of the three

6    County Commissioners to call the police to report Plaintiff for criminal conduct and

7    referred to a desire to deter Plaintiff's political speech from escalating. SMF 7, 13.

8    Commissioner Davis unilaterally made the decision to censor Plaintiff's free speech

9    and call the police on the earlier occasion in which she delivered a note to

10   Commissioner Blankenship. SMF 7. Commissioner Davis testified that part of the

11   reason that he directed Plaintiff's chalking be cleaned up so quickly was to prevent the

12   public from seeing it. SMF 17. Commissioner Davis has also acknowledged that he

13   will continue to call police to report chalking on public property based on the content

14   of the message. SMF 20.

15       3.    Clerk Rowton acknowledges that she personally engaged in the conduct

16   that led to the criminal complaint and charges filed against Plaintiff. She first observed

17   Plaintiff writing in chalk on the walkway to the building and brought this to the

18   attention of the commissioners, and personally called the police to report it because

19   Plaintiff had "acted out against" the commissioners previously. SMF 12-15. While

20   Ms. Rowton claims that her actions were done at the direction of the county

21   commissioners, this does not change the fact that she was an integral participant in the

22   violation of Plaintiff's rights.

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

These actions of the individual defendants did in fact cause Bledsoe's damages. Her free speech was abridged by the obliteration of her message. She was also subjected to retaliatory criminal prosecution, with the damages attendant to being haled into court, mounting a defense, and fearing conviction. All Defendants named in their personal capacity are liable for Plaintiff's damages that were proximately caused by violations of her First Amendment rights that are beyond dispute.

**F.    Defendants Are Liable for Malicious Prosecution Under State Law.**

A successful claim of malicious prosecution under Washington law requires the plaintiff to show the following:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant;
>
> (2) that there was want of probable cause of the institution or continuation of the prosecution;
>
> (3) that the proceedings were instituted or continued through malice;
>
> (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and
>
> (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Bender v. City of Seattle*, 664 P.2d 492, 500 (Wash. 1983).

"Malice and want of probable cause are the gist of the action." *Id.* The malice prong is satisfied when the plaintiff shows that the official acted with an improper motive or "in a reckless disregard of the rights of the plaintiff." *Id.* (quoting *Peasley v. Puget Sound Tug & Barge Co.*, 125 P.2d 681, 689 (Wash. 1942)). The existence of probable cause should be analyzed under an objective, reasonable person standard. *Id.*

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

at 502. Probable cause must exist through the entire prosecution, and if the criminal proceedings against the plaintiff were dismissed or terminated in the plaintiff's favor, then the plaintiff has established a prima facie case that probable cause was lacking. *Rodriguez v. City of Moses Lake*, 243 P.3d 552, 554 (Wash. Ct. App. 2010).

There is no genuine dispute of fact on any of the five elements. There is no question that the Defendants instituted and continued the prosecution of Plaintiff for chalking on a public walkway: the sworn testimony of the Ferry County Prosecutor is that the office would not have brought charges had it not been for the Defendants' police report. SMF 22. Deputy Prosecutor Denning was even more explicit, stating that she did not think the incident warranted prosecution and that it only occurred because the commissioners were the alleged victims. SMF 23-24.

The second element is met because, as already discussed above and in the Court's prior order, there was never probable cause for the prosecution of the filed charge. *See* ECF No. 20, pp. 29-30. The district court dismissed the charge for lack of probable cause because she did not damage any property, which is an essential element of RCW 9A.48.090(a), the crime for which she was charged. SMF 30. Defendants cannot deny this fact and instead argue that probable cause existed under subsection (b) of the statute. This argument fails for two reasons. First, crimes that were not charged are irrelevant to the analysis of whether there was probable cause for the actual prosecution. Second, Ms. Bledsoe did not violate subsection (b) of the statute either, as it only prohibits writing on a "building or other structure" and does not prohibit writing on sidewalks or walkways. RCW 9A.48.090(b).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 19

The third element, that the proceedings were instituted or continued through malice, has been proven as a matter of law. From the outset, Defendants told the police that they were reporting Ms. Bledsoe because she "had acted out against them before." SMF 13-15. Defendants all testified that they called police because of concerns that Ms. Bledsoe's complaints against Commissioner Blankenship were "escalating." SMF 16. Defendants conceded that they would not necessarily report other people who engaged in similar chalking at the same location. SMF 19-21. Yet, Commissioner Blankenship told Ms. Denning that he believed that Plaintiff should receive the maximum penalty allowed by law, which Ms. Denning described as a rare and unreasonable response. SMF 27-28. This is conclusive and indisputable evidence that Defendants' initiated the prosecution based on preexisting malice toward Ms. Bledsoe, rather than a neutral assessment of her conduct.

Fourth, Plaintiff must prove that the criminal proceedings were terminated in her favor, which is proven by the order granting her motion to dismiss. SMF 30. Finally, Plaintiff must show that she suffered damages as a result of the prosecution. While the amount of damages should be decided by the jury, there is no question that the loss of First Amendment rights, as well as facing a criminal prosecution and prospect of jail time and fines, causes lost time, money, and mental pain and anguish.

## IV.    PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff Jaina Bledsoe respectfully requests that the Court grant summary judgment in her favor on liability for censoring her free

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 20

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1  expression and retaliating against her protected free expression in violation of the First

2  Amendment and state law on malicious prosecution.

3       DATED August 14, 2020.

4                  PAUKERT & TROPPMANN, PLLC

5                  By */s/ Andrew S. Biviano, WSBA #38086*

6                  ANDREW S. BIVIANO, WSBA #38086

7                  By: */s/ Breean L. Beggs, WSBA #20795*
                BREEAN L. BEGGS, WSBA #20795

8                  By: */s/ Mary Elizabeth Dillon, WSBA #50727*

9                  MARY ELIZABETH DILLON, WSBA #50727

10                 Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1

CERTIFICATE OF SERVICE

2

3        I hereby certify that on the 14th day of August, 2020, I electronically filed and

4    served a copy of this document using the CM/ECF filing system which will send

5    notification of such filing to the following:

6            Jerry J. Moberg                          jmoberg@jmlawps.com
             Jerry Moberg & Associates, P.S.
7            P.O. Box 130 – 124 3rd Avenue S.W.
             Ephrata, WA 98823
8

9            James E. Baker                           jbaker@jmlawps.com
             Jerry Moberg & Associates, P.S.
10           P.O. Box 130 – 124 3rd Avenue S.W.
             Ephrata, WA 98823
11

12

13           Mary M. Rathbone                         mrathbone@jmlawps.com
             Jerry Moberg & Associates, P.S.
14           P.O. Box 130 – 124 3rd Avenue S.W.
             Ephrata, WA 98823
15

16       I declare under penalty of perjury under the laws of the United States of America

17   that the foregoing is true and correct.

18                                          /s/ Andrew S. Biviano, WSBA #38086
                                            Andrew S. Biviano, WSBA #38086
19

20

21

22

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
• Page 22