**HON. ROSANNA MALOUF PETERSON**

Jerry J. Moberg and James E. Baker
Moberg Rathbone Kearns, P.S.
124 3rd Avenue S.W. – P.O. Box 130
Ephrata, WA 98823
jmoberg@mrklawgroup.com
jbaker@mrklawgroup.com
(509) 754-2356
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAINA BLEDSOE, A SINGLE WOMAN, <br><br> Plaintiff, <br><br> v. <br><br> FERRY COUNTY, WASHINGTON, et al., <br><br> Defendants. | No. 2:19-CV-00227 RMP <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date: 10/09/2020 1:30 p.m. <br> With Oral Argument @ Spokane |

## I.  RESPONSE TO PLAINTIFF'S FACTUAL BACKGROUND

Prosecuting Attorney Kathryn Burke testified that her office made the independent decision to charge Plaintiff with malicious mischief and that the decision to charge Plaintiff or to continue the prosecution was not due to any pressure or coercion from the County Commissioners or any other third party. (DSMF 18.)  Ms. Burke testified that she did not have any conversation on this matter with the three Commissioners or Ms. Rowton and the only conversation she

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc



P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

had about the matter was with Deputy Prosecuting Attorney Tabbatha Denning. (*Id.* 8, 9.)  Ms. Burke testified that the charge should have been under the second prong of RCW 9A.48.090.   (DSMF 15.) Ms. Denning testified that no one from the Commissioners' Office told her to bring charges against Plaintiff or to continue the prosecution of Plaintiff. (DSMF 79, 80.)     Plaintiff testified that she has "no information" about what discussions, if any, took place in the Prosecutor's Office about whether to file charges, or about conversations with the Prosecutors and anyone from the Commissioners' Office before or after the charge was filed. (DSMF 48-50.) "[T]he prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution." *Beck v. City of Upland,* 527 F.3d 853, 862 (9th Cir. 2008).  This is not a case where "local officials . . . improperly exerted pressure on the prosecutor, knowingly provided misinformation to [her], concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of proceedings." *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1067 (9th Cir. 2004).

Citing SMF 12-17, Plaintiff asserted that Ms. Rowton was directed by the Commissioners "to call the police to report [Plaintiff's] conduct, as well as remove the messages before anyone could see them." Plaintiff lacks evidence that the

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc

**MR MOBERG RATHBONE KEARNS**

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

Commissioners directed anyone to remove the chalk or that removal of the chalk was for the purpose of removing any alleged political speech. Commissioner Blankenship testified that there was no consensus of the Commissioner of what Ms. Rowton should say to the police. (ECF 30-3.) Citing SMF 17, Plaintiff asserted: The Board of Commissioners directed that the words written by Plaintiff be immediately removed; Commissioner Davis testified that part of the reason that he directed it be cleaned up so quickly was to prevent the public from seeing it." Commissioner Davis did not testify that the chalking was removed due to the words used by Plaintiff. (ECF 30-4 at 341.) Commissioner Davis testified that chalking was removed because  was unprofessional to have it present at the Commissioners' building. (*Id.*)   Citing SMF 19-21, Plaintiff asserted that "Blankenship and Davis testified that they would not call the police – or are not sure if they would call the police – if they observed other people writing in chalk on county property." (*Id.*) They responded to hypothetical questions: Commissioner Blankenship was asked about a "city street" or a "county road." (ECF 30-3 at 311.) Commissioner Davis was asked about children drawing pictures of flowers and rainbows, a student writing "Go Tigers," a Happy Birthday message, a swastika and "Black Lives Matter." (ECF 30-4 at 344-350.)   Citing SMF 18, Plaintiff asserted that the Commissioners have "the ability to influence the policies and actions of the



prosecutor's office."  Commissioner Davis testified that this was only theoretical (ECF 30-4 at 324-325) and Ms. Burke testified that the Commissioners had no influence on her charging decisions in criminal cases. (ECF 33-1 at 488.)  Citing SMF 22, Plaintiff asserted that Ms. Burke "testified that that her office would not have filed against Plaintiff but for the actions of Defendants in calling the police and seeking criminal charges." Ms. Burke testified that she would need a report before filing any charges and she has not received information about any other chalk incidents to review. (ECF 30-1 at 277.) Citing SMF 23-24, Plaintiff asserted: "Tabbatha Denning, the Deputy Prosecutor . . . testified  that Deputy Prosecutor Denning testified that it was her professional judgment that . . . the chalking did not warrant criminal prosecution" and when she first read the police report she thought it was "silly."  Citing SMF 24-25,  Plaintiff asserted that Ms. Denning testified that "she believed it was the desire of the . . . Commissioners to prosecute Plaintiff [and] that outweighed her professional judgment and led to the filing of charges."  Citing SMF 27,  Plaintiff further asserted that Ms. Denning "testified that she believes the content of [Plaintiff's] speech was 'certainly part of' the reason she was prosecuted, and she "believe[s] there is some possibility" that the prosecution was due to [Plaintiff's] history of criticizing the county commissioners."    Ms. Denning's

MR MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

opinions and beliefs and comments about possibilities amount to inadmissible speculation without any relevance in this case.

Citing SMF 27, Plaintiff asserted that "Commissioner Blankenship told . . . Denning that he thought the appropriate punishment . . . was the maximum allowed by law: 364 days in jail and a $5,000 fine." Plaintiff lacks evidence that Commissioner Blankenship knew the maximum penalty for the crime. Moreover, this statement was alleged to have been made after Plaintiff's prosecution was ongoing. Plaintiff testified that Commissioner Blankenship had the right to want the maximum penalty imposed. (ECF 33-5 at 517.) Citing SMF 31, Plaintiff asserted: "Judge Brown wrote: 'All of this is to say  that this is not about chalk. This is about a personal dislike for a citizen of Ferry County." Judge Brown's opinions are inadmissible under Fed. R. Evid. 402, 602, 802, Fed. R. Civ. P. 56(c)(4) and case law barring speculation and lack of personal knowledge.

Citing SMF 19 and 16, Plaintiff asserted that Commissioner Blankenship "testified that he would not call law enforcement to report people writing with chalk in other circumstances" and that in this case he did so "because he was concerned about Plaintiff 'escalating' her free speech . . . ." Commissioner Blankenship did not say anything about the escalation of "free speech." He simply answered hypothetical questions not related to Plaintiff's case. (ECF 30-3 at 309-310.)

MR MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

Without any citation, Plaintiff asserted at p. 8 of her brief that "Defendants have freely conceded that their intent in censoring and prosecuting Ms. Bledsoe was to chill her political expression." This is a reckless statement made without any supporting facts. Citing SMF 17, Plaintiff asserted that Commissioner Davis acknowledged that his "motivation in ordering the immediate removal of Plaintiff's chalked speech" was in part why of the reason that "he directed it be cleaned up so quickly was to prevent the public from seeing it." Commissioner Davis made no such statement. Commissioner Davis did not testify that the chalk was removed due to the content of the words. (ECF 30-4 at 341.) Commissioner Davis testified that it was his opinion it was "inappropriate" to write on the entry way to the Commissioners' building "regardless of the content of the message." (ECF 33-3 at 500 ¶ 5.) Citing SMF 13-16, Plaintiff asserted that the "Commissioner's Office called the police and sought criminal charges against [Plaintiff] for her protected speech . . . ." While Ms. Rowton called the police, the Commissioners did not seek criminal charges for protected speech. A simple report was made to the police and thereafter only the Prosecuting Attorney's Office was involved. Citing SMF 13-15, Plaintiff asserted: "When speaking to the police on behalf of the County Commissioners, Ms. Rowton stated that they wouldn't ordinarily report the incident to the police but 'this person has acted out against us before.'" Ms. Rowton did not



state what the Commissioners would "ordinarily" do.  (ECF 30-2 at 287, 290-291.)

There is no record of any other chalking at the entry way to the Commissioners'

building.

## II.     RESPONSE  TO PLAINTIFF'S ARGUMENT

### A.     Defendants did not violate Plaintiff's First Amendment rights.

The Court succinctly described Plaintiff's claims:

Ms. Bledsoe alleges that Defendants infringed on her First Amendment right to free speech by removing her chalk statements from the entry way before her intended audience could view them and by demanding her prosecution for malicious mischief in retaliation for her chalked statements.

(ECF 20 at 5.)  There is no liability for removing markings from a public space

whether it be political speech or expressive speech including colorful murals. "No

one has a First Amendment right to deface government property." *Mahoney v. Doe*,

642 F.3d 1112, 1122 (D.C. Cir. 2011) (Kavanaugh, J., concurring), *quoted with*

*approval United States v. Nieves*, 2019 WL 1315940, *4 (S.D. N.Y. 2019); RCW

9A.48.090(b) (no right to unauthorized marking on property). If there was such

liability, then governments would be liable each time they removed unauthorized

writings from public property. Plaintiff's claim is the Defendants demanded her

prosecution in retaliation for her chalked statements. The three opinions cited by

MR MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

Plaintiff (ECF 28 at 6-7) do not suggest that Plaintiff's First Amendment rights were violated in this case.

•      *Sloman v. Tadlock,* 21 F.3d 1462 (9th Cir. 1994), was a lawsuit brought by a supporter of a ballot measure advocating limits to growth in the Simi Valley area against the City of Simi Valley and Officers Tadlock, Allen, Rein and Hale. 21 F.3d at 1465. The only claims to go to the jury were against Hale and Rein. *Id.* at 1466. Rein obtained a defense verdict but Hale was found liable. *Id.* The circuit court affirmed judgment against Hale and held that Tadlock should not have been dismissed on summary judgment.

On two occasions, Tadlock and Rein warned plaintiff for interference with traffic. *Id.* Later, Hale cited plaintiff for failing to obey warnings and continuing to interfere with traffic. *Id.* Another time, Hale warned plaintiff about interfering with traffic. *Id.* at 1465-66. At a trade fair, Tadlock and Allen asked Hale and Rein if plaintiff could legally be removed from the fair. *Id.* at 1466. After plaintiff refused to leave or put down his campaign sign, **Tadlock and Allen signed a citizen's complaint and plaintiff was arrested for trespassing and was taken to jail.** *Id.*

The circuit court noted that under the First Amendment plaintiff was required to prove that **the expression of political opinion or engaging in political activities was a substantial or motivating factor in the officers' decisions to**

MR MOBERG RATHBONE KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

**warn, ticket and/or take plaintiff into custody.** *Id.* at 1471. Tadlock *admitted in his deposition* that one reason why he asked plaintiff to leave the fair was **because he was opposed to the political sentiment conveyed by a sign plaintiff was carrying.** *Id.* at 1473. Summary judgment for Tadlock was not appropriate but it was appropriate for Allen because plaintiff "presented no direct or circumstantial evidence that Allen participated in the arrest process because of Sloman's political beliefs." *Id.* at 1474.

Here, Plaintiff lacks evidence that the individual Defendants caused Plaintiff to be charged by the Prosecutor's Office because of Plaintiff's political activity. Here, the Commissioners' Office simply made a report to the police of a defacement of their building. No reasonable jury could find that the motivating factor was because Plaintiff expressed a political opinion.

• *Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998), was a lawsuit brought by anti-abortion picketers challenging the constitutionality of a city ordinance regulating picketing, leafletting and displaying of signs on public property. The district court denied plaintiffs' motion for a preliminary injunction against enforcement of the ordinance. The circuit court found that the ordinance's content-neutral regulation of the size and number of signs used was a permissible time, place and manner restriction. The circuit court stated that a speech restriction

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc

MR | MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA 98823
(509) 754-2356 | Fax (509) 754-4202

is content-neutral if it is "justified without reference to the content of the regulated speech." 146 F.3d at 638.

• *Frisby v. Schultz,* 487 U.S. 474 (1988), was a lawsuit brought by abortion protestors to enjoin enforcement of a municipal ordinance banning picketing before or about the dwelling of another. The Supreme Court held in favor of the municipality because the ordinance "only focused picketing taking place solely in front of a particular residence" and the ordinance served the "significant government interest" by "the protection of residential privacy." 487 U.S. at 483-84.

**B.    Defendants did not retaliate against Plaintiff for engaging in protected speech.**

The four opinions cited by Plaintiff (ECF 9-10) do not suggest that there was retaliation against Plaintiff for exercising free speech.

• *Hartman v. Moore,* 547 U.S. 250 (2006). Plaintiff alleged the prosecutor and five postal inspectors "engineered his criminal prosecution in retaliation for his criticism of the Postal Service, thus violating the First Amendment." 547 U.S. at 254. Plaintiff alleged "the postal inspectors launched a criminal investigation against him  . . . before they had any inkling of either of the two schemes [and] that the inspectors targeted him for his lobbying activities, and they pressured the United States Attorney's Office to have him indicted." *Id.* The prosecutor was dismissed due to absolute immunity for prosecutorial judgment. *Id.*



at 255.  After a six-week trial, the district court dismissed the criminal charges for "a complete lack of direct evidence." *Id.* at 254. The civil claims against the postal inspectors reached the Supreme Court, which sided with the postal inspectors and held that a plaintiff in a § 1983 retaliatory prosecution action must be plead and prove the absence of probable cause for pressing the underlying criminal charges. *Id.* at 252, 266.  Here, the Commissioners and Ms. Rowton simply reported the chalking incident.  Criminal charges were filed without Defendants even discussing the matter with the Prosecuting Attorney's Office.  Defendants did not pressure the Prosecutor to file criminal charges. Moreover, Plaintiff lacks proof that "retaliatory animus" was "the cause of injury." The *Hartman* Court stated that "proof of an improper motive is not sufficient to establish a constitutional violation – there must be evidence of causation." *Id.* at 260, *quoting Crawford-El v. Britton,* 523 U.S. 574, 593 (1998).  The Court stated that "action colored by some degree of bad motive does not amount to a constitutional tort if the action would have been taken anyway. 547 U.S. at 260.  Defendants further discussed *Hartman* at ECF 32 at 19-20.

• *Ariz. Students' Ass'n v. Ariz. Bd. of Regents,* 824 F.3d 858 (9th Cir. 2016). There was not probable cause for the University's Board of Regents to believe that the Students' Association broke the law and the Board of Regents stopped student funding because the Students' Association supported a ballot

MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

initiative that the Board of Regents did not like. Defendants further discussed *Arizona Students'* at ECF 32 at 18.

•    *O'Brien v. Welty,* 818 F.3d 920 (9th Cir. 2016). Plaintiff was disciplined based upon his confronting and videotaping two professors.  818 F.3d at 924.   In deciding a Rule 12(b)(6) motion, the circuit court held that a state regulation permitting the university from disciplining students for threatening conduct did not violate the First Amendment on its face or as applied.   *Id.* However, the student stated a First Amendment retaliation claim because plaintiff's "allegations, taken as true, could plausibly show that the defendants' actions in disciplining him were substantially motivated by his protective speech or expressive conduct."  *Id.* at 932.  Here, the Commissioners and Ms. Rowton did not cause Plaintiff to be charged with a crime.  Plaintiff's conduct was merely reported and the Prosecuting Attorney's Office filed charges based upon a review of the police report without any urging by Defendants.

•    *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019). Bartlett was arrested by police officers, Nieves and Wright, for disorderly conduct and resisting arrest at a winter sports festival. 139 S.Ct. at 1720. The officers claimed they arrested Bartlett after he yelled at them while they spoke to others, Bartlett shoved Wright when asked to leave and that Bartlett resisted arrest by moving slowly when they tried to

MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

handcuff him. *Id.* at 1720-21. Bartlett alleged that he was arrested in retaliation for his speech. *Id.* at 1721. The majority opinion by Justice Roberts held that in suits for retaliatory arrest, a finding of probable cause to arrest a person defeats that person's claim that the arrest was wrongfully made for the person exercising First Amendment rights unless the person can "present [] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727. The "similarly situated "exception is "a narrow qualification" to the rule "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.*. Here, Plaintiff has not provided any evidence that *similarly situated individuals* were treated differently. Plaintiff merely presented evidence that no other person in the City of Republic has been prosecuted for writing in chalk on places other than the entrance to the Commissioners' building. Similarly situated individuals are those "who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992). *See also Gallo v. Burson,* 568 Fed.Appx. 516, 517 (9th Cir. 2014) ("all relevant aspects are alike").

The narrow exception in *Nieves* was due to the concern "that some police officers may exploit the arrest power as a means of suppressing speech." *Nieves,* 139 S.Ct. at 1727. This concern pertaining to police officers is not applicable to



Plaintiff's case. By its terms, the "narrow qualification" set forth in *Nieves* is limited to officers having probable cause to arrest. Defendants further discussed *Nieves* at ECF 32 at 21-22.

**C.    The County must be dismissed under *Monell* because no local policy, practice or custom caused Plaintiff's injury.**

Local governments cannot be held liable on a theory of *respondeat superior* for the conduct of their employees. *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 690 (1977).  In deciding Defendants' Rule 12(b)(6) motion, the Court framed the issue as "whether the Plaintiff has alleged sufficient facts to support a reasonable inference that the Commissioners were acting as policymakers when requesting, and allegedly directing, Ms. Bledsoe's prosecution." (ECF 20 at 21.) On summary judgment, Plaintiff must present a genuine dispute on this issue and has not done so.  The Commissioners and Ms. Rowton did not request or direct Plaintiff's prosecution and were not policymakers for criminal prosecutions.  Ms. Burke testified: "With regards to my job wherein I prosecute cases on behalf of the state of Washington, the Ferry County Board of County Commissioners has no influence whatsoever." (ECF 33-1 at 488 ¶ 3.)

An unconstitutional government policy cannot be inferred from the report made to the police.  The Commissioners were not responsible for setting policy in the Prosecutor's Office for prosecuting crimes.  The policy comes from the ethical



P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

duties of Prosecutors such as RPC 3.1 and Ms. Burke's policy: "When I make any charging decision, the decision is based upon the elements of the offense and whether the elements of the offense are met." (ECF 33-1 at 490 ¶ 12.)

While "an unconstitutional governmental policy could be inferred from a single decision" the decision must be "taken by the highest officials responsible for setting policy in *that area* of the government's business." *City of St. Louis v. Praprotnik* 485 U.S. 112, 123 (1988). (Emphasis added.)

## D.     The Individual Defendants are entitled to qualified immunity.

The Individual Defendants are entitled to qualified immunity because Plaintiff's constitutional right were not violated. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is also proper because it "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). To violate "clearly established law the "contours" of a right must be "sufficiently clear" that every reasonable government official would have understood "that what he is doing violates that right" and "exiting precedent must have placed the statutory or constitutional violation beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2001).

MR MOBERG RATHBONE KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

At the Rule 12(b)(6) stage, the Court found that Plaintiff's Complaint stated plausible constitutional claims against the Individual Defendants. (ECF 20 at 25.) The Court was required to accept as true Plaintiff's allegation that "the Commissioners' Office was in close contact with the Prosecutor's Office, directing her prosecution, and that Commissioner Blankenship told the Prosecutor's Office that Ms. Bledsoe should receive the maximum penalty for malicious mischief . . . ." (ECF 20 at 8.) At the summary judgment stage, Plaintiff requires proof that raises a genuine dispute on her allegations. While there is evidence that Commissioner Blankenship stated that he wanted Plaintiff to receive the maximum penalty, this occurred after Plaintiff was already charged -- when she interviewed Commissioner Blankenship as part of her pre-trial discovery. Commissioner Blankenship simply gave his opinion to Plaintiff.

There is no clearly established law prevents a public official from making a report to law enforcement about defacement of the public officials building – no matter what the graffiti says.

### E.    The Individual Defendants are not individually liable.

Plaintiff asserted that the Individual Defendants were liable because they all "had some fundamental involvement in the conduct that caused the violation of Plaintiff's First Amendment rights[.]" (ECF 28 at 16.)

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc



P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

*Commissioner Blankenship* – Plaintiff asserted that Commissioner Blankenship "was part of the consensus decision of the three County Commissioners to call the police to report Plaintiff for criminal conduct" and "to deter Plaintiff's political speech from escalating." (*Id.*)  The police were not called for the purpose of reporting "criminal conduct" or to deter "political speech." The police were called to make a record of what occurred due to various occurrences that took place in the past.

*Commissioner Davis* – Plaintiff asserted that Commissioner Davis "was . . . part of the consensus decision . . . to call the police to report Plaintiff for criminal conduct and referred to a desire to deter Plaintiff's political speech from escalating." (ECF 28 at 17.)  Plaintiff asserted that "he directed Plaintiff's chalking be cleaned up quickly to prevent the public from seeing it." (*Id.*)  Plaintiff asserted that he "acknowledged that he will continue to call police to report chalking on public property based on the content of the message." (*Id.*)  The police were not called to report "criminal conduct" or to deter "free speech."

*Clerk Rowton* – Plaintiff asserted that Ms. Rowton "was an integral participant in the violation of Plaintiff's rights" because she "personally engaged in the conduct that led to the criminal complaint and charges filed" and because after observing Plaintiff writing in chalk on the walkway she "brought this to the

MR MOBERG RATHBONE KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

attention of the commissioners, and personally called the police to report it because Plaintiff had 'acted out against' the commissioners previously." (ECF 28 at 17.) Ms. Rowton called to make a record of what occurred and she was in no way responsible for the criminal complaint and charges.

**F.     Defendants are not liable for malicious prosecution under § 1983.**

There is a presumption of prosecutorial independence in a § 1983 malicious prosecution case. *Sargent v. Washington,* 2019 WL 142032, *3 (W.D. Wash. 2019), *citing Newman v. Cnty. of Orange,* 457 F.3d 991, 994 (9th Cir. 2006), *cert. denied* 549 U.S. 1253 (2007). To rebut the presumption, a plaintiff must produce evidence

> that the district attorney was subjected to unreasonable pressure by the [third party], or that [the third party] knowingly withheld relevant information with the intent to harm [plaintiff], or that the [third party] knowingly supplied false information.

*Id., quoting Smiddy v. Varney,* 803 F.2d 1469, 1471 (9th Cir. 1986). Here, Plaintiff cannot meet this burden because the Prosecutor was not subjected to pressure.

**G.     Defendants are not liable for malicious prosecution under state law.**

Malicious prosecution actions are not favored by the law. *Hanson v. City of Snohomish,* 121 Wn.2d 552, 557, 852 P.2d 295 (1993). Five elements are required:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the

**MR** | MOBERG
RATHBONE
KEARNS

P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Hanson,* 121 Wn.2d at 558. **All five elements must be proved.** *Id.* Probable cause is deemed "established as a matter of law and operates as a complete defense" when the defendant "made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to him, and that the prosecuting attorney thereupon preferred a criminal charge . . . ." *Bender v. City of Seattle,* 99 Wn.2d 582, 593, 664 P.2d 492 (1983).

Here, the Commissioners and Ms. Rowton *did not have any communication with the Prosecutor's Office* about the chalking. The Commissioners and Ms. Rowton simply were interviewed by Plaintiff as part her pre-trial discovery. Plaintiff's allegation that "[t]he Commissioners' office was in close contact with the Prosecuting Attorney's Office before and after the Complaint was filed" (ECF 1 at 8 ¶ 4.23) has no factual support. "Suspicion does not defeat summary judgment." *Hawkins v. Douglas Cnty.,* 2017 WL 5709568, *5 (E.D". Wash. 2017).

*Defendants' alleged institution and continuance of prosecution* – Plaintiff requires proof that "the prosecution . . . was instituted or continued by the defendant[.]" *Bender,* 99 Wn.2d at 593. Here, the Commissioners and Ms. Rowton did not institute or continue the prosecution. Without any communication between

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc

DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT –
Page 19 of 21
No. 2:19-cv-00227-RMP



P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

the Commissioners' office and the Prosecutor on this matter Defendants could not have instituted or continued the prosecution.

*Alleged lack of probable cause* – There was probable cause to charge Plaintiff under the second prong of RCW 9A.48.090 but the court did not allow the State to amend the charge. The Prosecutor's mistake cannot be imputed to Defendants. Although probable cause must continue during the prosecution, *Bender,* 99 Wn.2d at 593, the Prosecutor's mistake cannot be imputed to Defendants.

*Defendants' alleged malice* – Plaintiff requires proof that "the proceedings were instituted or continued through malice[.]" *Bender,* 99 Wn.2d at 593. The Commissioners and Ms. Rowton did not institute or continue the prosecution. The mere fact of reporting the occurrence to the police does not suggest animosity or vindictiveness toward Plaintiff.

### III.    CONCLUSION

The Court should deny Plaintiff's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 4th day of September 2020.

MOBERG RATHBONE KEARNS, P.S.

*s/ Jerry J. Moberg and James E. Baker*
JERRY J. MOBERG, WSBA No. 5282
JAMES E. BAKER, WSBA No. 9459
Attorneys for Defendants

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc



P.O. Box 130 | 124 3rd AVE S.W.
Ephrata, WA  98823
(509) 754-2356 | Fax (509) 754-4202

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System and the Clerk will send notification to:

Andrew S. Biviano
abiviano@pt-law.com

Breean L. Beggs
bbeggs@pt-law.com

Mary Elizabeth Dillon
bdillon@pt-law.com

DATED this 4th day of September 2020 at Ephrata, WA.

MOBERG RATHBONE KEARNS, P.S.


_s/ Dawn Severin_____
DAWN SEVERIN, PARALEGAL

\\PROLAWSVR\lawdata\Documents\Ferry County\Bledsoe v. Ferry County\Pleadings - Misc\595384.doc

DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT –
Page 21 of 21
No. 2:19-cv-00227-RMP