FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 30, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAINA BLEDSOE, a single woman,<br><br>     Plaintiff,<br><br> v.<br><br>FERRY COUNTY, WASHINGTON; MICHAEL BLANKENSHIP, in his personal, representative, and professional capacity; NATHAN DAVIS, in his personal, representative, and professional capacity; and AMANDA ROWTON, in her personal, representative, and professional capacity,<br><br>     Defendants. | NO:  2:19-CV-227-RMP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross Motions for Summary Judgment filed by

Plaintiff Jaina Bledsoe, ECF No. 28, and Defendants Ferry County, Michael

Blankenship, Nathan Davis, and Amanda Rowton, ECF No. 32.  The Court heard

oral argument from the parties on October 9, 2020.  Plaintiff Jaina Bledsoe was

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~1

represented by Mr. Andrew S. Biviano and Ms. Mary Dillon.  Defendants were represented by Mr. Jerry J. Moberg and Mr. James E. Baker.

Ms. Bledsoe is a citizen of Ferry County.  Defendant Blankenship is a former Ferry County Commissioner.  Defendant Davis serves as Chairperson for the Board of Ferry County Commissioners.  Defendant Rowton is the Clerk for the Board of County Commissioners.

On February 26, 2018, prior to a public meeting, Ms. Bledsoe wrote two messages in chalk outside the entrance to the Ferry County Commissioners' building.  The chalk messages were removed before meeting attendees could see what Ms. Bledsoe had written.  Clerk Rowton, at the direction of the Commissioners, called the local police to create a record of the incident.  This led to the filing of a criminal charge against Ms. Bledsoe for malicious mischief in the third degree pursuant to RCW 9A.48.090(1)(a).  The criminal case against Ms. Bledsoe eventually was dismissed for lack of probable cause.

Defendants argue that their actions were lawful pursuant to Washington's malicious mischief statute, RCW 9A.48.090(1)(b), which criminalizes writing, painting, or drawing any inscription, figure, mark of any type on any public or private building or other structure or any real or personal property owned by another person.  Defendants further argue that Ms. Bledsoe did not have a First Amendment right to "deface" public property, pointing to case law in which courts have upheld the enforcement of similar "defacement" statutes as applied to sidewalk chalk.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~2

On July 2, 2019, Ms. Bledsoe filed a Complaint in this Court against Defendants Ferry County, Commissioner Michael Blankenship, Commissioner Nathan Davis, Commissioner Johnna Exner, and Clerk Amanda Rowton.  ECF No. 1.  Ms. Bledsoe named each Individual Defendant in his or her individual and official capacities.  *Id.*  Ms. Bledsoe asserts two claims arising under § 1983 for Defendants' alleged violations of the First Amendment for censoring her speech and for retaliatory prosecution.  Ms. Bledsoe also asserts a malicious prosecution claim under Washington State law.  *Id.*  Defendants moved to dismiss the Complaint for failure to state a claim.  *See* ECF No. 8.  The Court partially granted the Motion to Dismiss, dismissing Ms. Bledsoe's claims against Commissioner Exner without prejudice, but denied the remainder of the Motion to Dismiss.  *See* ECF No. 20.  The parties have now filed cross motions for summary judgment.  ECF Nos. 28, 32.  The Court has reviewed the pleadings, heard oral argument from the parties, and is fully informed.  For the reasons stated in this Order, the Court GRANTS Plaintiff's Motion for Summary Judgment in part, and DENIES Defendants' Motion.

## STATEMENT OF FACTS

**Local Newspaper and Shepard's Crook & Note**

At various times in 2017, Ferry County Commissioner Mike Blankenship publicly described community members advocating for a non-motorized recreational trail as "sheep" and "jackasses."  ECF No. 38 at 2.  Plaintiff Jaina Bledsoe regularly purchased advertising space in the local newspaper and wrote opinion pieces

criticizing the Ferry County Commissioners, including Commissioner Blankenship

for his use of the words "sheep" and "jackasses" when referring to his constituents.

*Id*.  Commissioner Blankenship publicly responded in the local newspaper, stating:

> Let me be clear, I am impressed that the words "sheep" and "jackasses" can be economic drivers for the newspaper (advertisement cost). Furthermore, let me be clear that the person or persons who are waiting for an apology should not hold their breath, since I am certain it would be fatal!
>
> The use of those words was not an accident.  I said what I meant and meant what I said.
>
> It should be understood that any statement, comment, or word that does not name an individual or object directly could only be offensive to those who feel it describes them.  Hence the saying, "If the shoe fits, wear it!"

ECF No. 30-6 at 2.

On October 17, 2018, Ms. Bledsoe delivered to the Commissioners'

Building a shepherd's crook and note addressed to Commissioner Blankenship.

ECF No. 38 at 2.  The note stated:

> The "sheep" that are all "jackasses" about that "piece of shit trail". . . would like you to ensure you have the proper tool for your particular leadership  style. Enjoy! Sincerely, Jaina Bledsoe.

ECF No. 30-7 at 3.  However, before the shepherd's crook and note could be

received by Commissioner Blankenship, Commissioner Nathan Davis called the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~4

sheriff to have the crook removed "to keep it from escalating into something big."[1]

ECF No. 30-4 at 10.  As a result, Commissioner Blankenship did not receive the

crook or the note.  ECF Nos. 30-4 at 11; 38 at 4–5.

**Ms. Bledsoe writes in chalk**

On February 26, 2018, prior to a public meeting, Ms. Bledsoe wrote with

sidewalk chalk outside the entrance of the Commissioners' meeting room the

following phrases: "You are not sheep" and "You are not jackasses."  ECF No 38 at

5.  Ms. Bledsoe wrote on the cement public walkways leading to the entrances of the

public meeting room at the county-owned Commissioners' building.  *Id.* at 6.  The

Board of County Commissioners post public communication notices on the doors to

the entrances of the building.  *Id.*  There is no dispute that Ms. Bledsoe's chalk was

temporary, caused no permanent property damage, nor impaired access to the public

walkways or the building.  *Id.*; ECF No. 30-2 at 12.

Amanda Rowton, the Clerk of the Commission, observed Ms. Bledsoe writing

in chalk on the walkway.  ECF No. 30-2 at 6; 43 at 7.  Clerk Rowton relayed her

observation of Ms. Bledsoe to Commissioners Exner, Blankenship, and Davis, who

---

[1] Defendants object and argue that Commissioner Davis' report to police involving the shepherd's crook and note is irrelevant because Ms. Bledsoe's First Amendment claim is not premised on this incident.  However, the Court agrees with Ms. Bledsoe that these facts are relevant to the chalking incident at issue because they provide context for the words "sheep" and "jackasses" as well as provide evidence of Ms. Bledsoe's "string of actions."  *See* Fed. R. Evid. 401; ECF No. 30-2 at 11.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~5

were in a public meeting session.  ECF Nos. 30-3 at 18–19; 30-4 at 17–18; 43 at 7.
The Commissioners went outside to see the chalk.  ECF Nos. 30-3 at 18–19; 30-4 at
18; 38 at 6.

Clerk Rowton testified that "the consensus of the board was call the police."
ECF Nos. 30-2 at 6; 38 at 7.  Clerk Rowton also testified that she called the police
because "[the Commissioners] wanted to create a record for the string of actions
because they were concerned about it escalating."  ECF Nos. 30-2 at 6; 38 at 7.
Clerk Rowton told the responding officer that she saw Ms. Bledsoe writing on the
sidewalk and wanted to report it because Ms. Bledsoe had acted out against the
Commissioners before.  ECF Nos. 30-2 at 8–10; 30-9 at 4; 38 at 8.[2]  Ms. Rowton
testified that she conveyed the reason for the call (because Plaintiff "had acted out
against them before") to the responding officer at the direction of the Board of
Commissioners.  ECF Nos. 30-2 at 9; 38 at 8.

Commissioner Blankenship testified that "there was a sense of escalation" and
that "[w]e went from writing in the newspaper to now marking up the sidewalk, and
then what's next?"  ECF Nos. 30-3 at 20; 38 at 8–9.  Commissioner Blankenship
also testified that he suspected "there was a consensus somewhere in the room that it

---

[2] Defendants object to the police report based on hearsay and authentication grounds.
These objections are without merit as the statements qualify as an opposing party
statement and authentication is established via testimony of a witness with
knowledge.  Fed. R. Evid. 801(d)(2); Fed. R. Evid. 901(a), (b)(1), (b)(8).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~6

needed to be reported," but there was not a consensus among the Commissioners with respect to what Clerk Rowton should say to the police.  ECF No. 30-3 at 21.

The chalk messages were removed before the public meeting by Jennifer Knowles, the Board's Deputy Clerk.  ECF Nos. 30-2 at 6; 30-4 at 23; 43 at 10.  The Commissioners had the chalk messages removed because "it [was] unprofessional" and "it's considered part of the building."  ECF No. 30-4 at 23.  Commissioner Davis testified that the chalk was removed to "just try [ ] to keep the meeting at peace and not try to stir people up."  *Id.*  When asked if the Commissioners removed the chalk prior to the meeting so people attending would not see what Ms. Bledsoe had written, Commissioner Davis testified: "I suppose there might be a piece of that."  *Id.*

When asked whether he would call the Sheriff for messages in chalk that are advocating for a political candidate on county property, Commissioner Blankenship testified that "if they are not a threat, [he] would not."  ECF No. 30-3 at 17.[3]  When

_____

[3] Defendants object to Commissioner Blankenship's testimony based on the use of a hypothetical, calling for speculation, and relevance. ECF No. 38 at 12.  However, what Commissioner Blankenship would or would not do is within the realm of his personal knowledge, and the Court does not find that it calls for speculation.  Fed. R. Evid. 602.  The fact that Commissioner Blankenship would not report other sidewalk chalk messages or drawings has a tendency to make the fact that Ms. Bledsoe's chalk was reported based upon the identity of the speaker or the content of the message more probable and that fact is of consequence in determining the action.  Accordingly, the Court finds the evidence relevant.  Fed. R. Evid. 401.  Furthermore, the Court agrees with Ms. Bledsoe that the evidence speaks to Commissioner

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~7

asked whether he would report various incidents of messages or symbols in chalk,

such as birthday greetings or a swastika, Commissioner Davis testified "it just

depends on the format of free speech . . . I considered writing on [the entrance of]

our building crossing the line."  ECF No. 30-4 at 31.  In response to whether he

would call the police if "Black Lives Matter" was written in chalk in the same

location, Commissioner Davis testified "[i]f they want to go out on the sidewalk and

do it, that's fine.  They want to do it in the middle of the road, so be it . . . . But at the

end, I mean, it's encroaching on our office, and at the point, you know, we're having

to have people go out there and clean it off and take care of our building.  ECF No.

30-4 at 32. [4]

_____

Blankenship's motive, intent, and state of mind.  Fed. R. Evid. 803(4); ECF No. 43 at 12.

[4] Defendants object to Commissioner Davis' testimony based on use of a hypothetical, calling for speculation, and relevance.  ECF No. 38 at 13.  However, what Commissioner Davis would or would not do is within the realm of his personal knowledge, and the Court does not find that it calls for speculation.  Fed. R. Evid. 602.  The fact that Commissioner Davis would not, and did not, report other sidewalk chalk messages or drawings has a tendency to make the fact that Ms. Bledsoe's chalk was reported based upon the identity of the speaker or the content of the message more probable and that fact is of consequence in determining the action.  Accordingly, the Court finds the evidence relevant.  Fed. R. Evid. 401.  Furthermore, the Court agrees with Ms. Bledsoe that the evidence speaks to Commissioner Davis' motive, intent, and state of mind. Fed. R. Evid. 803(3); ECF No. 43 at 13.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~8

1    Commissioner Davis testified that he saw other chalk on a street in Ferry

2    County.  ECF No. 30-4 at 25–26.  He testified that he did not call the police to

3    report that chalk because "it wasn't part of [their] building . . . and so at that point

4    . . . I guess they can write whatever at that point."  *Id.*

5    **Ms. Bledsoe is charged with Malicious Mischief**

6        The Board of County Commissioners is both the legislative and executive

7    branch of government for Ferry County, a policymaking body for Ferry County,

8    and sets the budget for the Ferry County Prosecutor's Office.  ECF Nos. 30-4 at 6;

9    43 at 11.  According to Commissioner Davis, "[t]heoretically, [the Commissioners]

10   have an influence on every department."  ECF No. 30-4 at 6.  The Ferry County

11   Prosecuting Attorney also normally acts as the Board of County Commissioners'

12   attorney.  *Id.* at 24.

13       On March 21, 2018, the Ferry County Prosecuting Attorney filed a

14   complaint charging Ms. Bledsoe with Malicious Mischief in the Third Degree

15   pursuant to RCW 9A.48.090(1)(a) in Ferry County District Court.  ECF Nos. 1 at

16   7; 27 at 6.  The elected Ferry County Prosecuting Attorney, Kathryn Burke,

17   testified that if no police report had been created, the Prosecutor's Office would

18   not have had any information on which to base the charging decision.  ECF No.

19   30-1 at 7–8.  Ms. Burke also testified that if she had known about the incident,

20   absent the Commissioners' report, she probably would not have brought charges.

21   *Id.* at 7.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~9

1      Deputy Prosecuting Attorney, Tabatha Denning, who was assigned to Ms.

2   Bledsoe's case, testified that her "initial opinion reading it was [she] did think it

3   was silly" and that she was "going to decline this, [ ] there's no damage done."

4   ECF No. 30-5 at 5.  However, once Deputy Prosecutor Denning saw the

5   Commissioners as the victim, "[she] was going to take that to the higher person in

6   [her] office."  *Id.*  Deputy Prosecutor Denning also testified that in her professional

7   judgment, the facts of the chalking incident did not warrant criminal prosecution.

8   *Id.* at 6.[5]

9      Furthermore, Deputy Prosecutor Denning believes that to some extent, the

10   desire of the Board of County Commissioners to prosecute Ms. Bledsoe

11   outweighed Deputy Prosecutor Denning's professional judgment and led to the

12   filing of charges.  *Id.* at 7, 13 ("I believe we may not have prosecuted if not for the

13   board pushing it.").  Additionally, Deputy Prosecutor Denning testified that she

14   believes that the content of Ms. Bledsoe's speech was "certainly part of" the reason

15   Ms. Bledsoe was prosecuted.  *Id.* at 11.  Deputy Prosecutor Denning also testified

16

17   _____

   [5] Defendants object to Deputy Prosecutor Denning's testimony for lack of relevance
18   and personal knowledge.  The question of whether charges would have been brought
   and the prosecution of Ms. Bledsoe continued but for the actions of the
19   Commissioners is wholly relevant to the issues of malicious prosecution, first
   amendment retaliation, and *Monell* liability for Ferry County.  As the prosecutor
20   assigned to the case, Deputy Prosecutor Denning has personal knowledge of the
   events surrounding the criminal charging decision.  Fed. R. Evid. 602.
21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~10

1    that, in her personal opinion, the Commissioners' personal dislike of Ms. Bledsoe

2    had something to do with the decision to report Ms. Bledsoe and asking the

3    Prosecutor's office to prosecute Ms. Bledsoe. *Id.* at 12–13.

4            When interviewed by Deputy Prosecutor Denning, Commissioner

5    Blankenship said that he thought the appropriate punishment for Ms. Bledsoe was

6    the maximum punishment. ECF Nos. 30-5 at 9; 38 at 19. Deputy Prosecutor

7    Denning also interviewed Commissioner Davis and Commissioner Exner. ECF

8    No. 30-10 at 20.[6] Commissioner Exner indicated during her interview that the

9    decision by the Board of County Commissioners to "pursue [a] criminal charge

10   [was a] unanimous decision." ECF No. 30-10 at 27.[7]

11

12   [6] Defendants object based on hearsay and authentication grounds, as well as citing
     the Best Evidence Rule, since Commissioner Davis' interview was audio recorded.
13   Fed. R. Evid. 1002. The best evidence rule applies where a party seeks "to prove the
     content of a writing, recording, or photograph." However, "an event may be proved
14   by nondocumentary evidence, even though a recording of it was made." *Id.* (Notes
     of Advisory Committee). The Denning notes were produced by Defendants in
15   discovery and were authenticated as true and accurate copies, thus an objection on
     authentication grounds is without merit. ECF No. 30 at 3. Deputy Prosecutor
16   Denning's notes are being considered not for the content of what Commissioner
     Davis said, but to prove that she interviewed Commissioner Davis. Therefore, they
17   are not inadmissible hearsay.

18
     [7] Defendants object to Prosecuting Deputy Denning's notes from the interview of
19   Commissioner Exner on hearsay and authentication grounds. Commissioner Exner
     spoke as an agent of the Board which includes Commissioners Blankenship and
20   Davis, thus her comments are admissible as an opposing party statement made by a
     party's agent on a matter within the scope of that relationship. Fed. R. Evid.
21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~11

1      According to Ferry County Prosecutor Burke, no other malicious mischief

2  charges have been filed against a person for chalk markings at the entrance of the

3  Commissioners' building or elsewhere in Ferry County.  ECF No. 30-1 at 5–6.

4  Prosecutor Burke testified that she has not received any other police reports

5  detailing incidents of chalk markings for her to review.  *Id.*  However, it is

6  undisputed that Ms. Bledsoe is not the only person who has placed chalk on public

7  property in Ferry County.  *See* ECF No. 31.  On April 5, 2017, the Ferry County

8  View newspaper published photographs of chalk drawings on the sidewalk in front

9  of a local motel in Republic, Washington, located across the street from the

10  Republic Police Station and the Ferry County Planning Department.[8]

11      On August 28, 2018, Ferry County District Court Judge Thomas D. Brown

12  granted Ms. Bledsoe's *Knapstad* Motion to Dismiss the malicious mischief charge,

13

14  801(d)(2).  Furthermore, it is a statement of the Board of County Commissioners'
    motive, intent, or plan and therefore excepted from hearsay. Fed. R. Evid. 803(3).

15  The Denning notes were produced by Defendants in discovery and were
    authenticated as true and accurate copies, thus an objection on authentication

16  grounds is without merit. ECF No. 30 at 3.  Plaintiff clarified that there was no audio

17  recording of the interview with Commissioner Exner.  ECF No. 33-5 at 18.

18  [8] Defendants object based on relevance grounds.  However, the fact that other
    persons in Ferry County have engaged in sidewalk chalking has a tendency to make

19  the fact that the report of Ms. Bledsoe's chalk was based on the speaker's identity
    more likely and is a fact of consequence in determining the action.  Fed. R. Evid.

20  401.  The Court finds the evidence relevant to the § 1983 claim premised on
    retaliatory prosecution as well as the malicious prosecution claim.

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~12

finding that the facts did not support the charge.  *See* ECF No. 30-11.  In granting

the motion, Judge Brown noted that it was uncontested that "[a]ll three

commissioners . . . were in agreement, that Bledsoe should be prosecuted fully for

her alleged crime."  *Id.* at 7.

## LEGAL STANDARD

When parties file cross-motions for summary judgment, the Court considers

each motion on its own merits. *See Fair Housing Council of Riverside Cty., Inc. v.*

*Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine issue of material fact exists if sufficient evidence supports the

claimed factual dispute, requiring "a jury or judge to resolve the parties' differing

versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence presented by the parties

must be admissible.  Fed. R. Civ. P. 56(e).

## DISCUSSION

### I.    Section 1983 Claims

Ms. Bledsoe brings her First Amendment claims against Defendants through

42 U.S.C. § 1983.  Relief under § 1983 requires a plaintiff to show "(1) a violation

of rights protected by the Constitution or created by a federal statute,

1    (2) proximately caused (3) by the conduct of a 'person' (4) acting under color of

2    state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

3        **A.  First Amendment Claim**

4            Ms. Bledsoe argues that there is no genuine issue of material fact that

5    Defendants infringed upon her First Amendment rights by removing the chalk

6    messages from the sidewalk before her intended audience could view them and

7    calling the police based upon the content of the messages and her identity as the

8    speaker.  ECF No. 28 at 6.  Defendants argue that they are entitled to summary

9    judgment because RCW 9A.48.090 was not applied unconstitutionally, and there is

10    a lack of evidence that any individual Defendant personally participated in

11    violating Ms. Bledsoe's First Amendment rights.  ECF No. 32 at 7–8.

12            As an initial matter, the Court examines whether Ms. Bledsoe's expressive

13    conduct of writing in chalk on a public sidewalk implicates First Amendment

14    principles.  The First Amendment provides: "Congress shall make no law

15    respecting an establishment of religion, or prohibiting the free exercise thereof; or

16    abridging the freedom of speech, or of the press; or the right of the people

17    peaceably to assemble, and to petition the Government for a redress of

18    grievances."  U.S. Const. Amend I.   "The constitutional safeguard . . . 'was

19    fashioned to assure unfettered interchange of ideas for the bringing about of

20    political and social changes desired by the people."  *New York Times Co. v.*

21    *Sullivan,* 376 U.S. 254, 270 (1964) (citing *Roth v. United States*, 354 U.S. 476, 484

(1957)).  "It is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions." *Bridges v. California*, 314 U.S. 252. 270 (1941).

Political speech is core First Amendment speech, critical to the functioning of our democratic system. *Stromberg v. California*, 283 U.S. 359, 369 (1931) ("The maintenance of the opportunity for free political discussion . . . is a fundamental principle of our constitutional system.").  The Supreme Court has recognized that the First Amendment reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and have consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318 (1988) (internal quotations and citations omitted).

Here, the writing of words with chalk "invokes these core principles in nearly their purest form." *Osmar v. City of Orlando*, 2012 WL 1252684 at *3 (M.D. Fla. Apr. 13, 2012) (holding that chalk messages on sidewalk in front of City Hall was political speech in a public forum).  Conduct such as painting, drawing, and writing, especially in a temporary medium, are "clearly expressive" and distinguishable from physically vandalizing or physically damaging property, which "are primarily destructive and only secondarily expressive." *See id.* (finding that chalk expression is analogous to the classic example of "the soap box orator

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~15

1   who knows his words may be lost to the winds."); *see also Mahoney v. Doe*, 642

2   F.3d 1112, 1116 (D.C. Cir. 2011).

3          The subject matter Ms. Bledsoe addressed goes directly to open debate of

4   important public concerns in Ferry County.  The non-motorized recreational trail at

5   issue was on the agenda at prior and upcoming public meetings. ECF No. 32 at 2.

6   Commissioner Blankenship's public comments referring to his constituents who

7   were advocating for the trail as "sheep" and "jackasses" was a topic of discussion

8   in the local newspaper.  ECF No. 30-6.  Thus, Ms. Bledsoe's expressive conduct

9   squarely addressed a politically contentious matter in Ferry County and such

10  speech is "critical to the functioning of our democratic system." *Stromberg*, 283

11  U.S. at 369.

12         Additionally, speech on public streets and sidewalks occupy a "special

13  position in terms of First Amendment protection." *United States v. Grace*, 461

14  U.S. 171, 180 (1983).  "Wherever the title of streets . . . may rest, they have

15  immemorially been held in trust for use of the public . . . and have been used for

16  purposes of assembly, communicating thoughts between citizens, and discussing

17  public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939);  *see also Mahoney*,

18  642 F.3d at 1118 (finding that street outside of the White House functions "as an

19  extension of the abutting sidewalk, a space [ ] previously held to be a public

20  forum.").  "The location and purpose of a publicly owned sidewalk is critical to

21  determining whether such sidewalk constitutes a public forum." *See Grace*, 461

U.S. at 177 (holding that the public sidewalks forming the perimeter of the

Supreme Court grounds, which are indistinguishable from other city sidewalks, are

public forums).  Traditional public forum property will not lose its recognized

character solely because it abuts government property, even where the property has

been dedicated to use other than as a forum for public expression.  *Id.* at 180.

Based on the record, the Court finds that the entryway leading to the public

meeting room where Ms. Bledsoe chalked her messages is a public forum.  ECF

No. 30-8; *see Frisby v. Schultz*, 487 U.S. 474, 480 (1988) (streets and sidewalks

are the archetype of a public forum).

Defendants argue that the placement of the chalk messages on the "threshold

into the building" should be significant to this Court's analysis.  There is no

genuine dispute that Ms. Bledsoe did not write or otherwise mark the

Commissioners' building; rather, she wrote statements in chalk on the public

walkway outside two entrances to the Commissioners' building.  ECF No. 38 at 6.

The definition of "building" as it relates to Washington State's malicious mischief

statute does not contemplate any type of "threshold."   *See* RCW 9A.48.010(1)(a)

(referencing RCW 9A.04.110(5)) (defining "building," in addition to its ordinary

meaning, as including "any dwelling, fenced area, vehicle, railway car, cargo

container, or any other structure used for lodging of persons or for carrying on

business therein, or for the use, sale, or deposit of goods").  Defendants' efforts to

characterize the sidewalk where Ms. Bledsoe wrote in chalk as the "threshold into

the building" so as to distinguish it from any other "real property . . . owned by any other person" in Ferry County are not persuasive.  It also is undisputed that "[t]he chalked messages caused no property damage and did not impair access to the building."  ECF No. 38 at 6.

Therefore, the Court concludes that Ms. Bledsoe's activities of writing a message in chalk on the sidewalk in front of a public building about a public interest issue is protected speech under the First Amendment.  The gravamen of Ms. Bledsoe's § 1983 claim for a violation of the First Amendment right to free speech is whether the Commissioners violated the constitutional guarantee by removing the chalk messages before others entering the building could read the messages, and by calling the local police which led to a criminal prosecution.

**As Applied Challenge**

The government and its political subdivisions may impose reasonable restrictions on the time, place, and manner of protected speech as long as the restrictions are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

The malicious mischief statute in Washington State proscribes writing, painting, or drawing any inscription, figure, or mark of any type on any public or private building or any real or personal property owned by any other person unless

the person has obtained the express permission of the owner of the property.  RCW 9A.48.090.  The statute prohibits certain conduct without reference to the message the speaker wishes to convey.  The statute furthers the government's recognized interest in "proscribing intrusive and unpleasant formats for expression," including "even [a] temporary blight."  *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. at 806, 810 (1984).[9]

Ms. Bledsoe argues that although the statute may be constitutional on its face, the statute's application to her speech activity was unconstitutional.  An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity under particular circumstances, even though the law may be capable of valid application to others.  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).  "[A] litigant may separately argue that discriminatory enforcement of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment."  *Id.*  In other words, the government used the law to limit or restrict speech based on the speaker's message despite the law appearing content neutral on its face.  *See id.*

---

[9] Although the Court acknowledges that the government has a recognized interest in proscribing "temporary blights," the Court notes that it has been argued that the government's interest in advancing peaceful forms of political protest, such as sidewalk chalking, has become significantly more compelling in light of recent riots and protests across the country.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~19

"When . . . the Government applies a restriction on defacement in a content-neutral and viewpoint-neutral fashion, there can be no serious First Amendment objection." *See Mahoney*, 642 F.3d at 1122 (Kavanaugh, J., concurring). However, "[t]he First Amendment means that government [ ] has no power to restrict expression because of its message, its ideas, its subject matter or its content." *Barr v. Am. Assoc. of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (Kavanaugh, J.) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content discrimination occurs when the government choos[es] the subjects that may be discussed while viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) (quoting *Perry Educ. Ass'n*, 460 U.S. at 59 (Brennan, J., dissenting) (internal quotations omitted)). "The Supreme Court has made clear that government suppression of speech based on the speaker's motivating ideology, opinion, or perspective is impermissible." *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

Here, Clerk Amanda Rowton testified that "[she] could see the person writing on the other doorway" and that the Board "wanted to create a record for the string of actions because they were concerned about it escalating." ECF No. 30-2 at 6. Commissioner Blankenship testified that there was "a sense of escalation" and that "we went from writing in the newspaper to now we're marking up the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~20

sidewalk, and then what's next?"  ECF No. 30-3 at 20.  When asked if the chalk was removed prior to a public meeting so the people attending would not see what Ms. Bledsoe had written, Commissioner Davis testified "I suppose there might be a piece of that."  ECF No. 30-4 at 23.  Commissioner Davis recognized that "if somebody wants to go do chalk or whatever . . . they can write whatever at that point" but contends such freedom exists only as long as "it wasn't part of [their] building."  ECF No. 30-4 at 27.  Indeed, Commissioner Davis saw chalk on a street in Ferry County yet did not report that marking of public property.  ECF No. 30-4 at 26.  Thus, the evidence supports that the Commissioners' decision to remove the chalk by Ms. Bledsoe and call the police was motivated by who she was and her previous expressive activities.

The Court recognizes that the nature of the forum may heighten "aesthetic concerns."  *Mahoney*, 632 F.3d at 1118 (citing *Taxpayers for Vincent*, 466 U.S. at 806 (upholding ordinance regulating posting of signs on public light posts)).  Although the professional appearance of the Commissioners' building may have been a concern, the record shows that it was not the motivating factor in removing Ms. Bledsoe's chalk messages.  *See* ECF No. 30-4 at 23.  In addition, the "special aesthetic considerations" relevant to restrictions on speech outside the White House, for example, are not the same "special aesthetic considerations" relevant to the Ferry County Commissioners' building, especially where the Commissioners post public notices on the doors where the walkway leads.  *See Mahoney*, 632 F.3d

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~21

1    at 1118 (finding that the District's interest in controlling the aesthetic appearance

2    of the street in front of the White House is substantial); *see also* ECF Nos. 1 at 5;

3    27 at 4.  The Court finds that the government's "aesthetic concerns" are not

4    heightened to a significant degree when the medium used is so temporary that the

5    message may be naturally erased by water, as opposed to a more permanent or

6    long-lasting medium of expression, such as spray paint on a building.  *See Osmar*,

7    2012 WL 1252684 at *4.

8         Defendants cite to several cases to support its position that Ms. Bledsoe's as-

9    applied challenge must fail.  *See Mahoney*, 642 F.3d 1112 (finding the defacement

10   statute was not unconstitutional as applied to defendant who was chalking anti-

11   abortion messages on street outside the White House "[b]ecause the District did

12   not curtail Mahoney's means of expression altogether"); *United States v. Nieves*,

13   2019 WL 1315940 at *4 (S.D. N.Y. Mar. 22, 2019) (regulation proscribing

14   vandalism, as applied to defendant's conduct of marking a monument's signpost,

15   did not violate the First Amendment); *Sherrard v. City of New York*, 2016 WL

16   7489069 *at 5 (S.D. N.Y. Dec. 22, 2016) (finding probable cause to arrest street

17   performer for violating defacement laws after he drew on passageway of subway

18   station with chalk); *Watters v. Otter*, 986 F.Supp.2d 1162, 1174 (D. Idaho 2013)

19   (upholding "no-chalking rules" applicable to the area surrounding the State

20   Capitol); *Occupy Minneapolis v. Cty. Of Hennepin*, 866 F.Supp.2d 1062, 1070 (D.

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~22

Minn. 2011) (finding restriction on using chalk on plaza property adjacent to the County Government Center constitutional).

Defendants' reliance on these cases is unpersuasive.  Whereas the case law cited by Defendants demonstrates that defacement statutes or regulations exist and may be enforced notwithstanding First Amendment protections, the markings at issue in those cases resulted in enforcement without respect to the identity of the actor.

The Court does not dispute that the malicious mischief statute's language is content neutral.  However, it is common knowledge that children, as well as some businesses, routinely engage in sidewalk chalking, without police involvement or prosecution.  When the proscription on chalking is only enforced when the government does not like who is drawing or what is drawn, the First Amendment is plainly implicated.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part) ("[C]riminal laws have grown so exuberantly and come to cover so much previously innocent conduct that almost anyone can be arrested for something.  If the state could use these laws not for their intended purposes but to silence those who voice unpopular ideas, little would be left of our First Amendment liberties.").

Although the First Amendment allows the Government to apply a restriction on defacement in a viewpoint-neutral fashion, the First Amendment prohibits the Government's enforcement of a restriction on defacement when motivated by the

speaker's identity and the views expressed by that speaker.  *See Mahoney*, 642

F.3d at 1122.  Here, the evidence shows that the Defendants did not apply the

restriction on defacement in a viewpoint-neutral fashion, because the chalk

messages were not removed and reported to the local authorities solely due to the

messages' location on the public sidewalk in conjunction with the medium used.

*See Watters*, 986 F.Supp.2d at 1174 ("[I]t is the tangible medium—chalking—that

creates the very problem the rule seeks to remedy.").  Rather, the facts show that

the chalk was removed and the police were called, at least in part, due to the

identity of the speaker and that speaker's previous expressive activities.  The

Commissioners' actions purposefully suppressed the ideas being communicated by

Ms. Bledsoe.  Accordingly, the malicious mischief statute as applied to Ms.

Bledsoe violated the First Amendment for purposes of § 1983 liability.

**Remaining § 1983 elements**

In addition to a violation of rights protected by the Constitution, a plaintiff

must show that the violation was proximately caused by the conduct of a "person"

acting under the color of state law.  *Crumpton*, 947 F.2d at 1420.  "The proximate

cause question asks whether the unlawful conduct is closely enough tied to the

injury that it makes sense to hold the defendant legally responsible for the injury."

*Mendez v. Cty. of Los Angeles*, 897 F.3d 1067, 1076 (2018) (citing Prosser and

Keeton on Torts § 42 (5th ed. 1984)).  Here, the Commissioners directed Ms.

Rowton to call the police to report the chalking incident as well as remove the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~24

1  chalk prior to the public meeting.  ECF Nos. 30-2 at 6; 30-4 at 23.  Thus, the

2  individual Defendants' conduct is closely enough tied to the injury to satisfy the

3  proximate cause element.

4        For a valid § 1983 claim, a plaintiff also must show that the conduct giving

5  rise to the violation was by a "person" acting under the color of state law.

6  *Crumpton*, 947 F.2d at 1420.  Generally, an official acts under the color of state

7  law when acting in his official capacity or while exercising his responsibilities

8  pursuant to state law.  *West v. Atkins*, 487 U.S. 42, 50 (1988).

9        Here, the decision to remove Ms. Bledsoe's speech and report her conduct to

10  the police was made while the Commissioners were engaged in a legislative

11  meeting session.  ECF Nos. 30-2 at 6; ECF No. 30-3 at 18; 30-4 at 17.  Therefore,

12  the decision was made by the Commissioners while they were acting in their

13  official capacities and exercising their responsibilities as Commissioners.  In

14  addition, the resulting police report named the Ferry County Commissioners Office

15  as the victim, as opposed to the Commissioners in their individual capacity as

16  citizens of Ferry County.  ECF No. 30-5 at 5–6; ECF No. 30-9 at 4.  Because the

17  Commissioners and Clerk Rowton were acting in their respective official

18  capacities, the violation was proximately caused by persons acting under the color

19  of state law.

20        Accordingly, summary judgment in favor of Ms. Bledsoe on her § 1983

21  claim premised on a First Amendment violation is appropriate.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~25

**B. First Amendment Retaliation Claim**

Ms. Bledsoe argues that there is no genuine dispute of fact that Defendants violated the First Amendment when they retaliated against her for exercising her free speech by calling the police and encouraging the subsequent prosecution. ECF No. 28 at 9.  "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  To succeed on a First Amendment retaliation claim, a plaintiff must prove that:

(1) [he or she] engaged in a constitutionally protected activity;

(2) the defendant's actions would "chill a person or ordinary firmness" from continuing to engage in the protected activity; and

(3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and the intent to chill speech.

*Ariz. Students' Ass'n v. Ariz. Bd. Of Regents*, 824 F.3d 858 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)).

Additionally, where the defendant is not the prosecuting attorney, the plaintiff must also show that the defendant "induced the prosecutor to bring charges that would not have been initiated without his urging." *Hartman,* 547 U.S. at 262.  Generally, this requires that the plaintiff must plead and prove a lack of probable cause.  *Id.* at 261 ("Demonstrating that there was no probable cause for

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~26

the underlying criminal charge will . . . show that retaliation was the but-for basis

for instigating the prosecution"); *see also Nieves*, 139 S. Ct. at 1727.

First, the Court has concluded *supra* that Ms. Bledsoe engaged in a

constitutionally protected activity. The First Amendment "affords protection to

symbolic or expressive conduct." *Virginia v. Black*, 538 U.S. 343, 358 (2003).

Furthermore, "[a] person's First Amendment free speech right is at its highest

when that person engages in core political speech." *Ariz. Students' Ass'n*, 824 F.3d

at 867; *Ballentine v. Las Vegas Metropolitan Police Dep't*, 2020 WL 4925694 at

*4 (D. Nev. Aug. 20, 2020) ("It is undisputed that the plaintiffs were engaged in

protected speech activities when they used chalk to write their messages on city

sidewalks.") (on appeal on other grounds).

Other courts have held that "[n]o one has a First Amendment right to deface

government property." *See Mahoney*, 642 F.3d at 1122 (Kavanaugh, J.

concurring) ("No one has a First Amendment right, for example, to spray-paint the

Washington Monument or smash the windows of a police car"). However,

sidewalk chalk is primarily expressive, as opposed to destructive, due to its

temporary nature. Here, the content of the expression, "you are not sheep" and

"you are not jackasses," was neither offensive nor threatening, and Commissioner

Blankenship publicly used the same rhetoric. *See* ECF Nos. 1 at 4; 27 at 3; 38 at 2.

Additionally, sidewalks are quintessential public forums. To the extent

"defacement" includes temporary chalk on public sidewalks, the Government's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~27

1   "aesthetic interest" in "proscribing even temporary blight[s]" should not be used to

2   selectively proscribe only those "temporary blight[s]" of a political nature or by a

3   particular speaker, as is the case here. *See Taxpayers for Vincent*, 466 U.S. at 810.

4         Second, there is no dispute that Defendants' actions of calling the police

5   eventually led to a criminal case against Ms. Bledsoe, which would "chill a person

6   of ordinary firmness" from continuing to engage in the protected activity. By the

7   Commissioners' and Clerk Rowton's own admissions, there was a consensus among

8   the Board to call the police. ECF No. 30-2 at 6. This decision was predicated on "a

9   sense of escalation," which arguably supports that there was an intent to "chill" Ms.

10   Bledsoe from further speech. ECF No. 30-3 at 20. But for the Board of

11   Commissioners' call to the police about Mr. Bledsoe's chalk messages, the

12   Prosecutor would not have had the knowledge or basis to pursue a criminal charge.

13   ECF No. 30-1 at 7–8.

14         The Court finds that a person of ordinary firmness would be chilled from

15   exercising his or her First Amendment rights in the future if their conduct was

16   reported to local authorities and that call led to a criminal investigative report

17   detailing their conduct, even if criminal charges were not ultimately filed. ECF No.

18   20 at 11; *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (investigation that did

19   not culminate in an arrest chilled First Amendment activities). A person of ordinary

20   firmness would be deterred from continuing to engage in the protected activity if on

21   notice that the police would be contacted to respond to the scene.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~28

1    Third, the Court finds that the evidence supports that Ms. Bledsoe's speech

2    was a substantial motivating factor behind the defendant's retaliatory actions of

3    calling law enforcement and seeking Ms. Bledsoe's prosecution.  Although

4    Defendants have argued that the professional appearance of the Commissioners'

5    building may have been a motivating factor in removing Ms. Bledsoe's speech, the

6    evidence supports that a professional appearance was not the motivating factor

7    behind the Commissioners' decision to notify the local authorities about Ms.

8    Bledsoe's chalking activity.  *See* ECF No. 30-4 at 23.  The police were notified due

9    to "a sense of escalation."  ECF No. 30-2 at 6.  Commissioner Blankenship clarified

10   that there was "a sense of escalation" because "[w]e went from writing in the

11   newspaper to now we're marking up the sidewalk, and then what's next?"  ECF No.

12   30-3 at 20.  Clerk Rowton indicated that "[the Commissioners] wanted to create a

13   record for the string of actions." ECF No. 30-2 at 11.  This "string of actions"

14   includes other First Amendment protected activities, such as authoring opinion

15   pieces for the local newspaper and the delivery of the shepherd's crook and

16   accompanying note.  ECF No. 38 at 2.  It is apparent that the Commissioners'

17   decision to call the police about the chalk messages was motivated by the fact that

18   Ms. Bledsoe was the actor and that she previously had engaged in expressive

19   conduct aimed at the Board of County Commissioners.  The Court finds that the

20   evidence supports a nexus between the Defendants' intent to chill Ms. Bledsoe's

21   speech and the decision to refer Ms. Bledsoe to local authorities as part of an

admitted effort to mitigate "a sense of escalation" arising from Ms. Bledsoe's previous expressive conduct.

Fourth, where the defendant is a nonprosecutor, a plaintiff must show that the nonprosecuting official induced the prosecutor to bring charges that would not have been initiated without his urging. *Id.* Generally, this requires that the plaintiff prove a lack of probable cause. *Id.* The existence of probable cause generally will defeat a retaliatory arrest claim because probable cause supports the conclusion that the prosecution would have occurred even without a retaliatory motive. *Hartman*, 547 U.S. at 264 ("Some sort of allegation . . . is needed to both bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action. The connection . . . is the absence of probable cause.").

The Court turns to the issue of probable cause in light of the Supreme Court's decision in *Nieves v. Bartlett. See* 139 S. Ct. at 1726–727. In *Nieves*, the Supreme Court held that there is a "narrow qualification" for retaliatory arrest claims: "[t]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 1727.

The Supreme Court pointed to the example of jaywalking, a misdemeanor offense that rarely results in arrest. *Id.* "If an individual who has been vocally complaining about police conduct is arrested for jaywalking . . . it would seem insufficiently protective of First Amendment rights to dismiss the individual's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~30

retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id.* In such a case, a plaintiff would not need to prove a lack of probable cause because it "does little to prove or disprove the causal connection between animus and injury." *Id.*

Whether or not this "narrow qualification" extends to retaliatory prosecution claims is unclear. *See Hartman*, 547 U.S. at 264. There is a presumption of prosecutorial regularity which the lack of probable cause requirement sought to address. *Id.* The Court notes, however, that the analogy used by the Supreme Court related to an arrest for jaywalking subsequent to an exercise of free speech is apropos here. Writing in chalk on the sidewalk, like jaywalking, has not resulted in other criminal cases in Ferry County notwithstanding the malicious mischief statute. ECF No. 30-1 at 5; RCW 9A.48.090. If an individual who has been vocally complaining about the County Commissioners is charged for writing on the sidewalk with chalk, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory prosecution claim on the ground that there was allegedly probable cause for a criminal charge. *Nieves*, 139 S. Ct. at 1727. Here, probable cause or the lack thereof "does little to prove or disprove the causal connection between animus and injury." *Id*.

Furthermore, the record presents objective facts that chalk on the sidewalks of Ferry County is not limited to the incident involving Ms. Bledsoe. ECF No. 31 at 8. The local newspaper reported in 2017 that "[a] couple local artists . . . drew

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~31

1    illustrations with chalk on the sidewalk in front of the Klondike Motel."  ECF No.

2    31 at 9.  These local artists were not criminally charged.  ECF No. 31 at 2.  Thus,

3    there is evidence that Ms. Bledsoe was arrested when other individuals engaged in

4    similar conduct, but not engaged in the same sort of protected speech, were not

5    arrested.

6          Nevertheless, whether the no-probable-cause exception announced in *Nieves*

7    applies to a retaliatory prosecution claim need not be resolved.  Here, the underlying

8    criminal charge was malicious mischief in the third degree pursuant to RCW

9    9A.48.090(1)(a).  ECF No. 10-1.  RCW 9A.48.090(1)(a) proscribes knowingly and

10   maliciously causing physical damage to the property of another, under

11   circumstances not amounting to malicious mischief in the first or second degree.

12   "Damages," in addition to its ordinary meaning, is defined as including "charring,

13   scorching, burning, or breaking" as well as "any diminution in the value of any

14   property as a consequence of an act."  RCW 9A.48.010(b).  There is no dispute that

15   the chalk messages did not cause physical damage.  ECF Nos. 30-2 at 12; 30-5 at 5;

16   30-11 at 4–5.  Ms. Bledsoe has demonstrated a lack of probable cause for a criminal

17   charge pursuant to RCW 9A.48.090(1)(a), because there is no evidence of one of the

18   elements:  physical damage.

19         In addition to the lack of probable cause, there is sufficient evidence showing

20   a causal connection between the retaliatory animus of the Board of County

21   Commissioners and the subsequent action of the Prosecutor.  *Hartman*, 547 U.S. at

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~32

1    262 ("The causal connection required here is . . . between the retaliatory animus of

2    one person and the action of another.").  Ferry County Prosecutor, Kathryn Burke,

3    testified that if a police report had not been filed, which was created as result of the

4    call and request for a police response by the Commissioners, the prosecutor would

5    not have had the knowledge or basis to pursue criminal charges.  ECF No. 30-1 at 7–

6    8.  "But for" the Commissioners' call to police, there would not have been a criminal

7    prosecution.

8        The facts also show that the Commissioners were in a position to exercise

9    influence over the Prosecutor's Office.  This case is factually distinguishable from

10   case law where the non-prosecuting official is a police officer.  *See Hartman*, 547

11   U.S. at 263.  Police officers and prosecutors are considered more as equals as arms

12   of the same executive branch of government.  Here, however, the Board of County

13   Commissioners is both the legislative and executive branch of government for Ferry

14   County.  ECF No. 30-4 at 5–6.  The Commissioners set the budget for the Ferry

15   County Prosecutor's Office, as well as set the amount of compensation for

16   employees of Ferry County.  ECF No. 30-4 at 6; *see also* RCW 36.16.070.

17   Commissioner Davis testified that the Board "theoretically [has] influence on every

18   department."  ECF No. 30-4 at 7.

19       Furthermore, Deputy Prosecutor Denning, who prosecuted the criminal case

20   against Ms. Bledsoe, testified that "once [she] saw the commissioners as the victim

21   [she] was going to take that to the higher person in [her] office."  ECF No. 30-5 at 5.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~33

Deputy Prosecutor Denning's statement that she recognized the importance of the Commissioners as the "victims" reflects the Commissioners' influence on Deputy Prosecutor Denning's prosecutorial decisions at the outset.

Deputy Prosecutor Denning also recalled from her conversation with Prosecutor Burke that the Office was going to contact the Commissioners "in regards to discussing a misdemeanor compromise short of charging." ECF No 33-5 at 34. Deputy Prosecutor Denning further testified that, despite her initial opinion that the case was "silly" and did not warrant criminal prosecution, her judgment was outweighed "to some extent" by the Commissioners' desire to prosecute. ECF No. 30-5 at 5, 7. Deputy Prosecutor Denning stated that it was her belief that "we may not have prosecuted if not for the board pushing it." ECF No. 30-5 at 13. Accordingly, the Court finds that the Board influenced the prosecution of the criminal case against Ms. Bledsoe.

Finally, there is no evidence that the criminal case would have been instigated independently of the Commissioners' retaliatory animus. *Hartman*, 547 U.S. at 261. The Ferry County Prosecutor, Kathryn Burke, testified that she was aware of the fact that chalking occurs in Ferry County on public property, but was "not aware of any other malicious mischief charges being filed because [she hasn't] received any others to review." ECF No. 30-1 at 5. She further testified that she would not have brought charges if the Commissioners had not reported the conduct. ECF No. 30-1

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~34

at 7.  Although Ferry County Prosecutor Burke later stated by sworn declaration[10]

that she believed that a crime of malicious mischief had been committed under RCW

9A.48.0909(1)(b), that was not the crime charged by her office.

Furthermore, the prosecution of Ms. Bledsoe's criminal case was assigned to

Deputy Prosecutor Denning.  ECF No. 33-1 at 4–5.  Deputy Prosecutor Denning's

deposition testimony speaks for itself: when asked if the Board of County

Commissioners' desire to prosecute outweighed her professional judgment, she

responded "I do believe to some extent, absolutely yes."  ECF No. 30-5 at 7.  Thus,

in addition to a lack of probable cause for the underlying criminal charge, the Court

finds that there is a causal connection between the Commissioners' decision to call

the police and report Ms. Bledsoe's expressive conduct and the Prosecutor's

decision to instigate criminal charges.

---

[10] The fact that the statements in the attached Declarations were made is not in dispute; however, the veracity of these statements, made after Prosecutor Burke was deposed, are self-serving and uncorroborated by her previous deposition testimony. *See Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("[A] self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that only states conclusions and not facts") (citing *F.T.C. v. Publ'g Clearing House Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~35

Accordingly, the Court finds that there are no genuine issues of material fact that weigh against resolving Ms. Bledsoe's § 1983 claim for retaliatory prosecution on summary judgment in favor of Ms. Bledsoe.

## C. County's Liability under *Monell*

Ferry County argues that Ms. Bledsoe's § 1983 claims against it should be dismissed pursuant to *Monell v. Dep't of Social Servs. of New York* because the County did not have a municipal policy or custom to violate First Amendment rights via criminal prosecution or otherwise.  436 U.S. 658, 691–94 (1978); ECF No. 32 at 14.

*Monell* made clear that local governments are "persons" for the purposes of 42 U.S.C. § 1983 so plaintiffs may sue local governments for constitutional violations under the statute.  436 U.S. at 690.  However, local governments may not be held liable on a theory of *respondeat superior* for the actions of their employees and agents.  *Id*.  Instead, the local government's actions must have caused the constitutional violation.  The Supreme Court explained that there must be a local policy, practice, or custom that caused the plaintiff's injury.  *Id*. at 694. "[P]olicy generally implies a course of action consciously chosen from among various alternatives."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

"No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body . . . because even a single decision by such a body unquestionably constitutes an act of official

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~36

government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)

(citing *Owen v. City of Independence*, 445 U.S. 622 (1980) and *Newport v. Fact*

*Concerts, Inc.*, 453 U.S. 247 (1981)).  But "not every decision by municipal officers

automatically subjects the municipality to liability." *Pembaur*, 475 U.S. at 481.

Municipal liability attaches where "a deliberate choice to follow a course of action is

made. . . by the official or officials responsible for establishing final policy with

respect to the subject matter in question." *Id.* at 483.

   To hold a local government liable for an official's conduct, a plaintiff must

first establish that the official (1) has "final policymaking authority" concerning the

action alleged to have caused the constitutional violation; and (2) that the official

acted as the policymaker for the local governing body.  *McMillian v. Monroe Cty.*

*Alabama*, 520 U.S. 781, 785 (1997) (holding that a county sheriff was a state official

when carrying out law enforcement duties).  Whether a particular official has "final

policymaking authority" and acted for the local governing body is a question of state

law.  *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 123 (1988)).  When an official's discretion regarding

policy is not meaningfully constrained or subject to review by a superior, the

policymaker likely has "final policymaking authority." *Praprotnik*, 485 U.S. at 123.

**First Amendment Violation**

   The Board of Commissioners is the legislative branch of government for Ferry

County.  ECF No. 30-4 at 6.  Pursuant to RCW 36.32.120(6), the county's legislative

authorities shall "[h]ave the care of the county property . . . and in the name of the county prosecute and defend all actions for and against the county."  The Commissioners' decision to remove Ms. Bledsoe's speech and call the police was not subject to review by a superior, thus the Board was the "final policymaking authority" with respect to care of the county property at issue:  the sidewalk in front of the Commissioners' building.  Furthermore, there is no dispute that the Commissioners act as the policymakers for Ferry County, both as the executive and legislative branch with respect to the care of county property.  Therefore, Ferry County is liable for the Commissioners' actions performed in their official capacity on behalf of Ferry County.

The Commissioners were acting in their official capacity when they decided to restrict Ms. Bledsoe's speech by removing her chalk messages on the public sidewalk.  Therefore, Ferry County is liable for Ms. Bledsoe's § 1983 claim premised on a violation of First Amendment rights.

**Retaliatory Prosecution**

The parties dispute who has "final policymaking authority" with respect to criminal charging decisions in Ferry County.  Defendants argue that the prosecutor made the decision regarding the criminal charge against Ms. Bledsoe, because only the prosecutor has that authority.  Ms. Bledsoe argues that the retaliatory action was the Commissioners' decision to call police, which then began the referral for prosecution.  *See* ECF No. 33-1 at 3.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~38

The Court addressed the relationship between the Board of County Commissioners and the Prosecutor's Office in resolving Defendants' Motion to Dismiss. ECF No. 20 at 21–23. The County Commissioners exercise control over the Prosecutor's Office through governance of the office's size and budget. *State ex rel. Banks v. Drummond*, 385 P.3d 769, 773 (Wash. 2016) (citing RCW 36.16.070).

In addition, a county prosecutor in Washington State is the legal advisor of the legislative authority, "giving it his or her written opinion when required by the legislative authority . . . touching any subject which the legislative authority may be called or required to act upon relating to the management of county affairs." RCW 36.27.020(1). Accordingly, Ferry County Prosecutor Burke is the legal advisor of the Board of County Commissioners and answers to the Board regarding issues that the Board is called or required to act upon relating to the management of county affairs. RCW 36.27.020(1).

Defendants argue that Prosecuting Attorney Burke and Deputy Prosecutor Denning do not answer to the Board of County Commissioners regarding when and how to prosecute alleged offenders. ECF No. 32 at 15. Rather, Defendants contend that the Prosecuting Attorneys are the "final policymakers" with respect to charging decisions. *Id.*; *see also* ECF No. 33-1 at 3–4 ("If a person suspected of criminal activity is not arrested, the investigating officer prepares a report that is submitted to [the Prosecutor's Office]. If there is enough to support a criminal charge, [the Prosecutor's Office] prepares a complaint or information.").

1          Washington law dictates that the prosecuting attorney in each county shall

2    "prosecute all criminal and civil actions in which the state or county may be a

3    party." RCW 36.27.020(4). Pursuant to RCW 36.27.040, the prosecuting attorney

4    may appoint one or more deputies who "shall have the same power in all respects as

5    their principal." Thus, to the extent that Ferry County Prosecutor Burke is the "final

6    policymaker" as to whether or not to prosecute a crime, then Deputy Prosecutor

7    Denning was also a "final policymaker." [11]

8          The Supreme Court has held that a county prosecutor can establish county

9    policy under appropriate circumstances. *Pembaur* 475 U.S. at 484–85 (holding that

10   the county prosecutor was a final decisionmaker for the county after officers sought

11   instructions from prosecutor, pursuant to state law, regarding a matter related to

12   officers' official duties). The Ninth Circuit also has held, as an issue of state law,

13   that some elected prosecutors and their deputies are "final policymakers" regarding

14   the decision to prosecute. *Compare Botello v. Gammick*, 413 F.3d 971, 979 (9th Cir.

15   2005) (finding that the district attorney under Nevada law was a final policymaker

16

17   [11] Even where the parties concede that a district attorney is the final policymaker in
     determining whether to proceed with a criminal prosecution, the question of whether
18   the district attorney acted as a policymaker for the local governing body remains.
     This requires a systematic review of the role of the official under the state's
19   constitution, law, and code. *See e.g.*, *Whatcom County v. State*, 993 P.2d 273, 280
     (Wash. Ct. App. 2000), review denied 10 P.3d 405 (2000) (finding that that county
20   prosecutors act for the state when prosecuting violations of law).

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~40

for the county when he decided not to prosecute case)[12] *with Christie v. Iopa*, 176 F.3d 1231, 1234 (9th Cir. 1999) (holding that deputy prosecutor in Hawaii did not have final policymaking authority because her decision to prosecute a case was constrained by policies made by the elected county prosecutor and subject to review by the same). However, the United States District Court for the Western District of Washington declined to hold the City of Bellevue liable based on the charging decisions of its chief criminal deputy prosecutor. *See Anderson v. City of Bellevue*, 862 F.Supp.2d 1095, 1108 (W.D. Wash. 2012).

The Court concludes that the Commissioners' ability to influence the Prosecutor's Office via its legislative powers, including controlling the Office's size and budget, does not equate to "final policymaking authority" with respect to the action ordered: the filing of a criminal complaint or information. There is no evidence before the Court that the Commissioners exercise control over prosecutorial decisions or the Prosecutor's Office's policies. This does not preclude a finding that the "final policymaker" of prosecutorial decisions is subject to influence by the legislative branch.

---

[12] The relevant Nevada statute conferring equal authority to deputy prosecutors was amended thereafter to read: "The appointment of a deputy must not be construed to confer upon that deputy policymaking authority for the office of the county clerk or the county by which the deputy is employed." NRS 252.070(1).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~41

Based on the record before the Court, a genuine issue of material fact remains as to whether the Commissioners exercised "final policymaking authority" as to Ms. Bledsoe's prosecution.  Accordingly, the Court will not impute liability to Ferry County for Ms. Bledsoe's § 1983 claim for retaliatory prosecution at this juncture.

**D. Individual Defendants' Liability**

To be individually liable, a defendant must have had "personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  When multiple officers act to cause the plaintiff's alleged constitutional violation, each officer's individual "liability under § 1983 is predicated on his 'integral participation' in the alleged violation.'" *Blankenhorn v. City of Orange*, 458 F.3d 463, 481, n. 12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)).

"'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Blankenhorn*, 485 F.3d at 481, n. 12 (quoting *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004)). However, "it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id.*; *see Boyd*, 374 F.3d at 780 (finding police officers "integrally participated" in use of flash-bang grenade during search because they were "aware of the decision . . . did not object to it, and participated in the search operation").  On the other hand, the Ninth Circuit has held that an officer is not an integral participant in an unlawful arrest when she is "not present [at the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~42

arrest], and there is no evidence that [she] instructed the other detectives to arrest [the plaintiff]." *Boyd*, 374 F.3d at 780 (quoting *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008)).

The issue to be resolved is whether the evidence demonstrates that each individual Defendant was an "integral participant" or had "some fundamental involvement" in (1) removing Ms. Bledsoe's chalk messages prior to being read by her intended audience in violation of the First Amendment; and (2) retaliating against Ms. Bledsoe for her speech by calling the police and seeking a criminal charge.

### *Commissioner Blankenship*

#### 1. First Amendment

The evidence supports the conclusion that the consensus among the Commissioners, including Commissioner Blankenship, was to remove the chalk messages by Ms. Bledsoe and call the police. ECF No. 30-2 at 6. Commissioner Blankenship testified that there was "a sense of escalation" because "we went from writing in the newspaper to now we're marking up the sidewalk." ECF Nos. 30-2 at 6; 30-3 at 20. Defendants do not allege or provide evidence that Commissioner Blankenship objected to the removal or the decision to call law enforcement regarding Ms. Bledsoe's chalk messages.

Furthermore, Defendants' argument that the police were not called for the purpose of reporting criminal conduct are not persuasive. ECF No. 37 at 17. The

Commissioners' actions were motivated by "a sense of escalation" arising from Ms. Bledsoe's previous speech and expressive conduct. ECF No. 30-3 at 20.  The evidence supports that regardless of the Commissioners' stated motive, they unanimously made the decision to contact the police.  At oral argument, Defendants stated that calling the police was to "make a record," although there was no explanation as to why a record would be needed unless it was to further curtail Ms. Bledsoe's speech and actions.  The evidence supports that Commissioner Blankenship was an "integral participant" in violating Ms. Bledsoe's First Amendment right by directing the removal of Ms. Bledsoe's chalk messages and directing that the police be called to create a record of her conduct.

## 2. Retaliatory Prosecution[13]

As noted above, the evidence supports that Clerk Rowton called the police to create a record of Ms. Bledsoe's actions at the direction of the Commissioners, including Commissioner Blankenship. ECF No. 30-2 at 6.  This call, which then prompted the responding officer's investigative report, ECF No. 30-9, provided the

---

[13] As noted above, the elements for a retaliatory prosecution claim include: (1) plaintiff engaged in a constitutionally protected activity; (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; (3) the protected activity was a substantial motivating factor in the defendant's conduct; and where the defendant is a nonprosecuting attorney (4) that the defendant induced the prosecutor to bring charges. *Ariz. Students' Ass'n*, 824 F.3d at 858; *see also Hartman*, 547 U.S. at 262.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~44

basis for a subsequent criminal complaint filed against Ms. Bledsoe.  ECF No. 30-6 ("If somebody doesn't submit a police report about anything, then I'm not going to review anything.").  The Board of County Commissioners is both the legislative and executive branch of government for Ferry County, thereby in a position to exercise influence.  ECF No. 30-4 at 6.  Commissioner Blankenship expressed his opinion that the maximum penalty would be an appropriate punishment for Ms. Bledsoe's actions.  ECF No. 30-10 at 12.  Deputy Prosecutor Denning testified that she believed, to some extent, that it was the desire of the Board of County Commissioners to prosecute that led to the filing of charges.  ECF No. 30-5 at 7.  Commissioner Exner indicated during her interview that the decision by the Board of County Commissioners to "pursue [a] criminal charge [was a] unanimous decision."  ECF No. 30-10 at 27.

The evidence supports a finding that Commissioner Blankenship was part of the unanimous decision to pursue a criminal charge against Ms. Bledsoe and participated in all of the decisions involving Ms. Bledsoe.  Taking the facts collectively, there is no genuine issue of material fact that Commissioner Blankenship was "meaningfully involved" in the retaliatory prosecution of Ms. Bledsoe.

/ / /

/ / /

/ / /

1    ***Commissioner Davis***

2    **1. First Amendment**

3    The evidence supports that the consensus among the Commissioners,

4    including Commissioner Davis, was to the remove the chalk messages by Ms.

5    Bledsoe and call the police.  ECF Nos. 30-2 at 6.  Commissioner Davis also admitted

6    to directing staff to remove the chalk messages prior to the public meeting scheduled

7    for later that day to avoid having others read Ms. Bledsoe's chalk messages.  ECF

8    No. 30-4 at 23 (stating, in response to why it was important to get it cleaned up prior

9    to the meeting, to "not try to stir people up" and they "knew there was going to be a

10    lot of people coming").  There is no evidence that Commissioner Davis objected to

11    removing the chalk messages by Ms. Bledsoe and calling the police.  ECF No. 30-4

12    at 23.  Therefore, the Court finds that Commissioner Davis was an "integral

13    participant" in violating Ms. Bledsoe's First Amendment right by directing the

14    removal of Ms. Bledsoe's chalk messages and directing that the police be called to

15    create a record of her conduct.

16    **2. Retaliatory Prosecution**

17    As noted above, the evidence supports that Clerk Rowton called the police to

18    create a record of Ms. Bledsoe's actions at the direction of the Commissioners,

19    including Commissioner Davis.  ECF No. 30-2 at 6.  This call, which then prompted

20    the responding officer's investigative report, ECF No. 30-9, provided the basis for a

21    subsequent criminal complaint filed against Ms. Bledsoe.  ECF No. 30-6 ("If

1    somebody doesn't submit a police report about anything, then I'm not going to

2    review anything.").   As both the legislative and executive branches of government

3    for Ferry County, the Board of County Commissioners, including Commissioner

4    Davis, is in a position to exercise influence.  ECF No. 30-4 at 6.

5        Although Commissioner Davis testified that he did not have any conversations

6    with anyone at the Prosecutor's Office, he was interviewed by Deputy Prosecutor

7    Denning.  ECF No. 30-10 at 20, 24.  Deputy Prosecutor Denning testified that she

8    believed, to some extent, that it was the Board of County Commissioners' desire to

9    prosecute that led to the filing of charges.  ECF No. 30-5 at 7.  Commissioner Exner

10    indicated during her interview that the decision by the Board of County

11    Commissioners to "pursue [a] criminal charge [was a] unanimous decision."  ECF

12    No. 30-10 at 27.

13        Therefore, the Court finds that Commissioner Davis was part of the

14    unanimous decision to pursue a criminal charge against Ms. Bledsoe and

15    participated in his official capacity in all of the decisions involving Ms. Bledsoe.

16    Taking the facts collectively, Commissioner Davis was "meaningfully involved" in

17    the prosecution of Ms. Bledsoe.

18    ***Clerk Rowton***

19        There is no dispute that Clerk Rowton called the local police to report Ms.

20    Bledsoe's expressive conduct at the request of the Commissioners.  ECF No. 30-2 at

21    6.  However, her involvement in the removal of the chalk messages, as well as the

1    call to police, was at the direction of her superiors.  ECF No. 30-2 at 9–10 ("The

2    commissioners wanted me to report it . . . I never wanted to participate in any of this.

3    So I'm just doing my job as directed by the commissioners.").  Clerk Rowton also

4    was interviewed by Deputy Prosecutor Denning.  ECF No. 30-10 at 2.

5        Although Clerk Rowton is a county official, she is not empowered to act in

6    the same way that Commissioners Blankenship and Davis are empowered as elected

7    officials.  *See* RCW 36.32.005; RCW 36.32.110.  Aside from the initial call to police

8    by Clerk Rowton, which was made at the direction of the Board of County

9    Commissioners, there is still a dispute of material fact as to whether Clerk Rowton

10   was "meaningfully involved" on her own accord in violating Ms. Bledsoe's First

11   Amendment rights.  Therefore, the Court does not find that summary judgment is

12   appropriate as to whether Clerk Rowton is individually liable for Ms. Rowton's

13   § 1983 claims.

14   **E. Qualified Immunity for Individual Defendants**

15       Defendants Blankenship, Davis, and Rowton argue that they are entitled to

16   qualified immunity as to Ms. Bledsoe's § 1983 claim[s] because Ms. Bledsoe's

17   constitutional rights were not violated, and there is no clearly established law that

18   prevents a public official from making a report to law enforcement about defacement

19   of a building.  ECF No. 37 at 15.

20       Government officials are entitled to qualified immunity "as long as their

21   actions could reasonably have been thought consistent with the rights they are

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~48

alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  In

resolving qualified immunity claims, the court must decide (1) whether the

defendant's conduct violated a constitutional right; and (2) whether the identified

constitutional right was clearly established at the time of the alleged violation.

*Tuuamalemalo v. Greene*, 946 F.3d 471, 476–77 (9th Cir. 2019).

As part of the second inquiry, the court also must consider whether the

defendant's interpretation of the law was reasonable given the facts with which the

defendant was presented.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th

Cir. 2006).  "Summary judgment on qualified immunity is not proper unless the

evidence permits only one reasonable conclusion."  *Munger v. City of Glasgow*

*Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000).

### 1.  Violation of a Constitutional Right

First, Ms. Bledsoe must prove that the individual Defendants' conduct

violated her constitutional rights.  *Tuuamalemalo*, 946 F.3d at 476–77.  As this

Court already has explained, the evidence supports that the individual Defendants

censored Ms. Bledsoe's speech in violation of the First Amendment based upon her

identity and the views she previously expressed.  *Ballentine*, 2020 WL 4925694 at

*4 ("It is undisputed that the plaintiffs were engaged in protected speech activities

when they used chalk to write their messages on city sidewalks.").  Commissioners

Blankenship and Davis also influenced the subsequent prosecution against her in

violation of the First Amendment.

### 2. Clearly Established Right

Second, Plaintiff must show that the rights violated were clearly established when Defendants' actions violated those rights. *Tuuamalemalo*, 946 F.3d at 476–77. As this Court previously found in resolving Defendants' Motion to Dismiss, the First Amendment rights that Ms. Bledsoe asserts were clearly established. ECF No. 20 at 26. The Court finds that caselaw has clearly established that the First Amendment "affords protection to symbolic or expressive conduct as well as to actual speech." *Black*, 538 U.S. at 358. The Court also finds that caselaw has clearly established that public officials cannot take action with the intent to "retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Ariz. Students Ass'n*, 824 F.3d at 858; ECF No. 20 at 26. In sum, it is well settled law that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman*, 547 U.S. at 256.

The individual Defendants argue that they are entitled to qualified immunity because "there is no clearly established law that prevents a public official from making a report to law enforcement about defacement of the public officials' building—no matter what the graffiti says." ECF No. 37 at 16. Defendants misconstrue the facts of this case. There is no evidence that sidewalk chalk written on a sidewalk in front of a public building equates to "defacement of the public officials' building . . . ." *Id.* However, there is clearly established law that prevents public officials from censoring speech where no "building" has been defaced and the

public officials are censoring speech based on the speaker's identity and the views previously expressed by that speaker.  *See Giebel*, 244 F.3d at 1188.  That law is the First Amendment.

In addition, Defendants note "that there is no evidence in the record that Defendants knew of the existence of RCW 9A.48.090."  ECF No. 44 at 2. Defendants admit that they were not knowingly reporting a crime.  If Defendants were not aware of the crime that they were allegedly reporting, then Defendants' report was about Ms. Bledsoe's expressive conduct:  writing in chalk about public issues in a public forum, action that is protected by the First Amendment.

The evidence permits only one reasonable conclusion: the Defendants acted to violate Ms. Bledsoe's constitutional rights that were clearly established by law. Therefore, the individual Defendants are not entitled to qualified immunity.  *See Munger*, 227 F.3d at 1087.

## II.    Malicious Prosecution

To succeed on a malicious prosecution claim under Washington State law, the plaintiff must prove:

(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant;

(2) that there was want of probable cause of the institution or continuation of the prosecution;

(3) that the proceedings were instituted or continued through malice;

(4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and

(5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Bender v. City of Seattle*, 664 P.2d 492, 500 (Wash. 1983).

First, the evidence supports that the prosecution was instituted or continued by defendants by calling the police and the inherent influence flowing from their positions as Commissioners.  *See* Black Law's Dictionary (11th ed. 2019) (defining "institute" as "to begin or start; commence").  When a prosecutor decides to pursue charges in response to information, the informer is liable if the official failed to exercise independent judgment due to the informer's direction, request, or pressure of any kind.  *See* Restatement (Second) of Torts § 653 (1977); *see also Hartman*, 547 U.S. at 262 (a malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure).

Ferry County Prosecutor, Kathryn Burke, testified that her office would not have been able to charge Ms. Bledsoe absent the call by the Commissioners and resulting police report.  ECF No. 30-1 at 7.  In addition, the facts discussed *supra*, show that the Board of Commissioners was in a position to exercise influence, and that the Deputy Prosecutor's decision to prosecute the case was not entirely independent from that influence.  ECF No. 30-5 at 7 (when asked whether the Board of County Commissioners' desire to prosecute outweighed her professional

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~52

judgment, Deputy Prosecutor Denning responded: "I do believe to some extent absolutely, yes").  Thus, the first element is satisfied.

Second, there is no dispute that there was no probable cause for the prosecution.  The court analyzes probable cause under an objective, reasonable person standard.  *See Bender*, 664 P.2d at 502.  Probable cause must exist through the entire prosecution, and if the criminal proceedings against the plaintiff were dismissed or terminated in the plaintiff's favor, then the plaintiff has established a prima facie case that probable cause was lacking.  *Rodriguez v. City of Moses Lake*, 243 P.3d 552, 554 (Wash. Ct. App. 2010).

Defendants have not provided any evidence that Ms. Bledsoe physically damaged the property of another.  Rather, Defendants admit that no physical damage resulted from Ms. Bledsoe's chalk messages.  ECF No. 2 at 12; ECF No. 30-3 at 19. The district court dismissed the charge against Ms. Bledsoe for lack of probable cause because she did not damage any property, which is an essential element of RCW 9A.48.090(a).  ECF 30-11.  Therefore, Ms. Bledsoe has established that no probable cause existed to charge and prosecute her with malicious mischief in the third degree pursuant to RCW 9A.48.090(1)(a).

Third, there is evidence supporting that the proceedings were instituted or continued through malice.  The malice prong is satisfied when the plaintiff shows that the officials acted with an improper motive or "in a reckless disregard of the rights of the plaintiff." *Bender*, 664 P.2d at 500.  "Impropriety of motive may be

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~53

established in cases of this sort by proof that the defendant instituted the criminal proceedings against the plaintiff . . . primarily because of hostility or ill will toward [her]." *Peasley v. Puget Sound Tug & Barge Co.*, 125 P.2d 681, 689 (Wash. 1942).

As the district court judge observed in his written ruling "this is about a personal dislike for a citizen of Ferry County." ECF No. 30-11 at 6. The facts support that assessment. The decision to call the police was motivated by who she is and Ms. Bledsoe's recent "string of actions" directed toward the Board of County Commissioners: speaking up in meetings; advertising in the local paper; delivering a shepherd's crook and note to Commissioner Blankenship; and writing in chalk on the sidewalk in front of the Commissioners' building. ECF No. 30-2 at 11. This ill-will permeated the following investigation and subsequent decision to prosecute Ms. Bledsoe. ECF No. 30-5 at 8 (Commissioner Blankenship told Deputy Prosecutor Denning that he thought the appropriate punishment for Ms. Bledsoe was the maximum allowed by law).

Fourth, there is no dispute that the proceedings terminated on the merits in favor of plaintiff. As noted above, the district court dismissed the case against Ms. Bledsoe because there was insufficient evidence to support a prima facie case of the crime charged. ECF No. 30-11.

Finally, there is evidence to support that Ms. Bledsoe suffered damages as a result of Defendants' actions. There is no question that defending against a criminal prosecution and the prospect of jail time and fines likely causes stress, time to

defend against the charges, and often money from lost wages.  Defendants do not argue otherwise.

The Court finds that Defendants have not raised a genuine issue of material fact as to whether there was malicious prosecution of Ms. Bledsoe.  Therefore, the Court finds that summary judgment in favor of Ms. Bledsoe is appropriate on her claim for malicious prosecution.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 28**, is **GRANTED IN PART**.

    a.  There is a genuine issue of fact as to whether Ferry County is liable for Plaintiff's § 1983 claim for retaliatory prosecution.

    b.  There is a genuine issue of fact as to whether Clerk Rowton is individually liable for Plaintiff's § 1983 claims.

2.  Defendant's Motion for Summary Judgment, **ECF No. 32**, is **DENIED**.

3.  Judgment shall be entered accordingly.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** October 30, 2020.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~55